F I L E D
United States Court of Appeals
Tenth Circuit

OCT 23 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee**,**

v.

NATHAN  J. (a Juvenile),

Defendant-Appellant**.**

Case No. 96-2195

(D.C. No. 95-550 JP )
(District of New Mexico)

ORDER AND JUDGMENT[*]

Before HENRY, LOGAN, and BRISCOE, Circuit Judges.

Defendant Nathan J., an Indian juvenile, appeals his conviction for knowingly engaging in sexual acts with a minor in Indian country, a violation of 18 U.S.C. § 2241(c).  He argues that the district court erred in admitting hearsay statements made by the minor victim to a physician.  We conclude that because Nathan J. did not raise a timely objection to the hearsay statements, their admission may be reviewed only for plain error.  Finding no plain error, we affirm Nathan J.'s conviction.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.  BACKGROUND

In October 1995, the government filed an information alleging that Nathan J. violated 18 U.S.C. §§ 1153, 2241(c), 2245(2)(A) and (C), and 5032 by "knowingly engag[ing] in and attempt[ing] to engage in a sexual act with V.Y., an Indian juvenile female who had not attained the age of 12 years."[1]  Rec. vol. I, doc. 1 at 1.  The information charged that this act occurred in Indian country on February 8, 1994 at Beclabito, New Mexico.  Nathan J. entered a plea of not guilty, and the district court held a bench trial in May 1996.

At trial, the government presented the testimony of the victim, V.Y., who was seven years' old at the time of the alleged sexual abuse.  V.Y. testified that on an afternoon when she and her younger brother and sister were left alone with Nathan J. at the preschool where her mother worked, Nathan J. led her into the boys' bathroom and "laid on top of me . . . . [and] put his private part on mine."  Rec. vol. II at 19.  (Trial Tr.

---

[1]    Section 1153 of Title 18 of the United States Code provides that an Indian who commits certain offenses within Indian country "shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

Section 2241(c) of Title 18 proscribes, within the territorial jurisdiction of the United States, knowingly engaging in a sexual act with a person under the age of twelve.  Sections 2245(2)(A) and (C) (now renumbered as § 2246(2)(A) and (C)) define "sexual act" to include "contact between the penis and the vulva" and "the penetration, however slight, of the anal or genital opening of another by hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

Section 5032 of Title 18 establishes procedures for proceeding against juveniles in federal courts.

for May 8, 1996).  V.Y.'s brother testified that he saw Nathan J. "laying on top of [V.Y.]" in the boys' bathroom.  Id. at 44.

The government also offered the testimony of V.Y.'s mother.  She said that V.Y. and her brother were both extremely quiet when she returned to the preschool on the afternoon on February 8, 1994.  That evening, she said, V.Y. complained of pain during urination, and V.Y. and her brother had nightmares.  The following evening, V.Y.'s brother told her that he had seen Nathan J. "[take V.Y.'s] pants off in the boys' rest room and he told me to watch her and him [and] he laid on [her]."  Id. at 89.   V.Y.'s mother then asked her directly about this, and she confirmed her brother's account.  See id. at 94-95.

The next morning, February 10, 1994, V.Y.'s mother and father took her to the offices of the Navajo Nation, where she spoke with a tribal investigator.  V.Y.'s parents then took her to the Indian Health Services Hospital in Shiprock, New Mexico, where she was interviewed by Dr. Sandra Garcia, a pediatrician.

Dr. Garcia testified at trial regarding her interview and examination of V.Y.  She reported that she obtained a medical history from V.Y. and her mother and that she interviewed V.Y. in her mother's presence.  In response to questioning, Dr. Garcia said, V. Y. told her that Nathan J. had put his penis in her vagina.  Dr. Garcia then performed a physical examination of V.Y.  She observed vulvar redness and erythema.  See Rec. vol. III at 197-198 (Trial Tr. for May 8, 1996).  Laboratory tests indicated blood in the urine,

3

but Dr. Garcia ruled out infection as a cause. Dr. Garcia said that trauma was one of the causes of the erythema and that the physical findings were consistent with physical abuse. See id. at 267.

Besides the two children, their mother, and Dr. Garcia, the government called several other witnesses at trial: Lincoln Nez, a mental health technician who referred V.Y. to a child psychiatrist; Melinda Henderson, an evidence technician who handled the underwear that V.Y. was said to have been wearing at the time of the assault; Charles Moffett, an FBI agent who had interviewed several witnesses about the assault; Joseph Errera, an FBI agent who testified that a stain on V.Y.'s panties contained blood, and Randy John, the Navajo Nation investigator who first interviewed V.Y.'s family.

The defense presented two witnesses: Nathan J.'s mother and Lorencita Luna. Ms. Luna worked in a building adjacent to the preschool where the alleged incident occurred. Nathan J.'s mother said that she had only left V.Y. and C.Y. alone with Nathan J. on February 8, 1994 for about ten minutes and that, when she came back the three children were sitting at a table and no one seemed upset. See Rec. vol. IV at 435 (Trial Tr. for May 9, 1996). Nathan J.'s mother also questioned the credibility of V.Y.'s mother, noting that when she had problems at home, she would take them out on co-workers and the children at school. See id. at 449.

Ms. Luna testified that V.Y.'s mother had a reputation for being dishonest and manipulative. See id. at 473. She said that on February 8, 1994, she had delivered a

message to the preschool building. She saw Nathan J. sitting at a table with V.Y. but noticed nothing unusual. She returned to the building a bit later and again noticed nothing unusual. See id. at 475, 477.

After hearing the evidence, the district court took the case under advisement and allowed the parties to submit proposed findings of fact and conclusions of law. In his proposed findings and conclusions, Nathan J. argued for the first time that Dr. Garcia's statements about what V.Y. told her during the examination constituted inadmissible hearsay. Nathan J. contended that these statements were admissible under neither Fed. R. Evid. 803(4) (which concerns out-of-court statements made for the purpose of diagnosis and treatment) nor Fed. R. Evid. 803(24) (the residual hearsay exception). See Rec. vol. I, doc. 40 at 6-9. Previously, in his response to the government's trial brief, Nathan J. had stated that he "[did] not object to any statements actually made to Dr. Garcia by the alleged victim in the course of medical treatment." Rec. vol. I, doc. 36 at 1.[2] Additionally, at trial, Nathan J. never objected to Dr. Garcia's testimony concerning what V.Y. told her during the course of the interview and examination. See Rec. vol. III at 192-268.

On May 31, 1996, the district court issued a decision finding Nathan J. guilty of the sexual abuse charges. The court said that it:

---

[2] However, in his response to the government's trial brief, Nathan J. did state that he objected to certain sections of reports, including the medical examination report, that memorialized V.Y.'s statements. See Rec. vol. I, doc. 36 at 2-3.

> was particularly impressed by the testimony of the victim . . . and her brother. . . . Their testimony was very straightforward and consistent on all significant points. The demeanor of each while testifying exuded honestly and there was nothing about their appearances or manner of testifying that in any way suggested that their testimony was contrived.

Rec. vol. I, doc. 42 at 3. The court further stated that the children's testimony was "strongly confirmed" by the testimony of Dr. Garcia. Id.

The court then addressed the admissibility of V.Y.'s statements to Dr. Garcia. As a preliminary matter, the court found that counsel had timely objected to the admission of V.Y.'s statements to Dr. Garcia. It then concluded that V.Y. made the statements to Dr. Garcia for the purpose of diagnosis and treatment and that the statements were therefore admissible under Fed. R. Evid. 803(4). The court further concluded that the statements were sufficiently trustworthy to be admissible under the residual hearsay exception, Fed. R. Evid. 803(24).

The court sentenced Nathan J. to a term of six years' probation (until his twenty-first birthday) and imposed several special conditions of supervision: (1) participation in a mental health sexual abuse counseling program, preferably with his mother, at the direction of the United States Probation Officer; (2) the completion of forty hours' community service; (3) writing letters of apology; and (4) completion of Nathan J.'s high school education. See Rec. vol. I, doc. 51 at 3.

## II. DISCUSSION

On appeal, Nathan J. argues that the district court erred in admitting Dr. Garcia's testimony concerning V.Y.'s statements to her. The government responds that because Nathan J. failed to object to Dr. Garcia's testimony about V.Y.'s statements when it was offered at trial, the admission of the statements should be reviewed only for plain error. Nathan J. replies that his challenge to the out-of court statements in his post-trial proposed findings and conclusions constituted a timely objection. As a result, he argues, the district court's evidentiary ruling should be fully reviewed on the merits. In light of these arguments, we must first decide whether Nathan J.'s post-trial proposed findings and conclusions were sufficient to raise a timely objection to Dr. Garcia's testimony about V.Y.'s statements.

## A. Was the Post-Trial Objection Timely?

Rule 103 of the Federal Rules of Evidence provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected" and "[i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of the objection if the ground was not apparent from the context . . . ." Fed. R. Evid. 103(a)(1). Rule 103 does not define "timely" and "[t]he lack of a definition suggests that the drafters intended to preserve a certain flexibility in the timing of objections." 21 Charles A.

Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5037, at 187 (1977).

However, there are certain factors that should be considered in determining timeliness:

> In administering the requirement that an objection be timely, the courts must consider both fairness and efficiency. The objector ought not to be held to an impossible standard such as requiring an objection before the ground becomes apparent to him. The opponent is entitled to have the objection raised at a time that permits him to best obviate the objection. Considerations of efficiency suggest that the objection should be made before time has been wasted introducing the evidence and while the court has some means of effectuating the objection that is more effective than ordering the jury to disregard the evidence.

Id. at 187-88. One commentator suggests the following rule of thumb:

> An objection must be made as soon as the ground of it is known, or could reasonably have been known to the objector, *unless* some special reason makes its postponement desirable for him and not unfair to the [offeror].

Id. (quoting J. Wigmore, Code of Evidence at 25 (3d ed. 1942)). The advisory committee's notes to Fed. R. Evid. 103 comport with this general approach. They observe that the purpose of the timely objection requirement is to ensure that "the nature of the error was called to the attention of the judge, so as to alert him to the proper course of action and enable opposing counsel to take proper corrective measures." Fed. R. Evid. 103(a) advisory committee's note (emphasis added).

Applying Fed. R. Evid. 103, this court has concluded that evidentiary objections must generally be made at the time that the evidence is offered. See Sorensen v. City of Aurora, 984 F.2d 349, 355 (10th Cir. 1993) ("Plaintiff's failure to make a proper

8

objection or offer of proof <u>at the time of trial</u> effectively precludes us from considering this issue on appeal.") (emphasis added); <u>Vallejos v. C.E. Glass Co.</u>, 583 F.2d 507, 511 (10th Cir. 1978) ("[T]he proper time to object to the admission of evidence such as the stipulation was at the time it was offered."). Other courts have taken a similar approach. <u>See</u> <u>Powell v. Burns</u>, 763 F.2d 337, 338 (8th Cir. 1985) (concluding that defendant's failure to object at first opportunity rendered objection untimely); <u>United States v. Gibbs</u>, 739 F.2d 838, 849 (3d Cir. 1984) (en banc) (finding objection untimely because the defendant made it "*not* when the evidence was offered, but during a motion to strike made *after* the Government rested"); <u>United States v. Parodi</u>, 703 F.2d 768, 783 (4th Cir. 1983) ("'Timeliness of objection under the Rule requires that it be made at the time the evidence is offered . . . .'" (quoting <u>DiPaola v. Riddle</u>, 581 F.2d 1111, 1113 (4th Cir. 1978)); <u>United States v. Kanovsky</u>, 618 F.2d 229, 231 (2d Cir. 1980) ("[A]ppellant's objection below was not timely since it was not made until after the witness was excused and the jury dismissed from the courtroom.").

In applying the timeliness requirement of Fed. R. Evid. 103, courts have also considered the unfairness to the party offering the evidence if the delay in making the objection prevents corrective measures from being taken. For example, in <u>Vallejos</u>, we observed that the party offering a stipulation had relied on the lack of an objection in deciding not to call certain witnesses. <u>See</u> 583 F.2d at 511-512; <u>see also</u> <u>Gibbs</u>, 739 F.2d at 849 (noting that if the defendant had objected when the evidence was offered, the

9

government could have called additional witnesses or proved the disputed element in other ways); United States v. One(1) 1963, Hatteras Yacht Ann Marie, 584 F.2d 72, 75 (5th Cir. 1978) ("Had the defendant interposed timely objections to the testimony at trial, the Government would have had an opportunity, before the close of its case, to produce the records in court and call the official custodian of records to give testimony.").

In the instant case, the parties agree that no objection was made to V.Y.'s out-of-court statements when they were offered. However, Nathan J. contends that the timeliness requirement should not be strictly applied here, noting that some procedural rules are relaxed when the matter is tried to the judge instead of to a jury. For example, in this very case, Nathan J. observes, the judge did not rule on certain evidentiary matters when the evidence was presented but instead took the objections under advisement and said that he would rule on them when he issued his final written ruling.

We are not persuaded that we should excuse Nathan J. from the timely objection requirement of Fed. R. Evid. 103. Like the untimely objections considered in Vallejos, Gibbs, and Hatteras Yacht, the post-trial objection advanced by Nathan J. raises factual questions that could have been explored at trial if the objection was raised at the time that the evidence was offered. As noted, Rule 803(4) allows the admission of out-of-court statements made for the purposes of diagnosis and treatment and reasonably pertinent to diagnosis and treatment. See United States v. Tome, 61 F.3d 1446, 1450 (10th Cir. 1995) (discussing Rule 803(4) requirements); United States v. Joe, 8 F.3d 1488, 1494-95 (10th

10

Cir. 1993) (same). Courts applying Rule 803(4) must often undertake case-specific, factual inquiries to determine the purpose of the out-of-court statements and their relationship to diagnosis or treatment. See, e.g., Tome, 61 F.3d at 1450 ("After reviewing the testimony of each pediatrician, we conclude that [the victim's] statements to those doctors were reasonably pertinent to her diagnosis or treatment."); United States v. Joe, 8 F.3d 1488, 1495 (10th Cir. 1993) (reviewing doctor's testimony that "the identity of the sexual assailant was important for his recommendation regarding [the victim's] aftercare, including appropriate counseling"). In this case, if Nathan J. had objected to the out-of-court statements of V.Y. that the government sought to offer through Dr. Garcia, both the government and the court would have had the opportunity to further question her to determine whether those statements were made for the purpose of diagnosis and treatment and were reasonably pertinent to such diagnosis and treatment. Nathan J.'s failure to object to these statements at trial deprived the government and the court of that opportunity. Accordingly, we conclude that the district court's evidentiary ruling may be reviewed only for plain error. See United States v. Martinez, 76 F.3d 1145, 1150 (10th Cir. 1996) (noting that in the absence of a timely objection, evidentiary rulings are reviewed only for plain error).

B.  Did the Admission of V.Y.'s Statements to Dr. Garcia Constitute Plain Error?

Rule 52(b) of the Federal Rules of Criminal Procedure provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  In United States v. Olano, 113 S. Ct. 1770 (1993), the Supreme Court concluded that the plain error provision of Rule 52(b) encompasses four requirements: (1) there must be error; (2) the error must be "plain," which means that it must be "clear", or "obvious[;]" (3) the error must affect substantial rights (i.e. "[i]t must have affected the outcome of the district court proceedings[;]" and (4) the error must "'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'"  Id. at 1777-79 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).   However, the plain error exception "'is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" United States v. Young, 470 U.S. 1, 15 (1985) (quoting United States v. Frady, 456 U.S. 152, 163 n.14 (1982)); see also United States v. Denogean, 79 F.3d 1010, 1012 (10th Cir.), cert. denied, 117 S. Ct. 154 (1996).

Applying that standard, we conclude that the admission of V.Y.'s statements through Dr. Garcia's testimony did not constitute plain error.  In particular, in light of the fact that V.Y. herself testified and was subject to cross-examination by his attorney, Nathan J. has failed to establish that the subsequent admission of V.Y.'s out-of-court statements seriously affected the fairness, integrity, or public reputation of his trial.  The problem that the hearsay rules seek to address--the lack of  reliability of out-of-court

12

statements--is alleviated here by the opportunity to cross-examine V.Y., the out-of-court declarant.  See United States v. Brown, 411 F.2d 1134, 1138 (10th Cir. 1969) (noting that "pure hearsay is inadmissible because such testimony carries no inherent likelihood of truthfulness and denies to the damaged party the right of cross-examination. . . .").

This conclusion is supported by our decision in United States v. Abreu, 962 F.2d 1425, 1430 (10th Cir. 1992), vacated on other grounds, 508 U.S. 935 (1993).  In that case, we focused on the defendant's opportunity to cross-examine the out-of-court declarant in concluding that the admission of the alleged hearsay did not constitute plain error.  See id. at 1430 ("Since the co-conspirator whose declarations are in question was a government witness at trial, subject to full cross-examination by appellant on all relevant issues . . . we cannot say that the admission of such hearsay testimony seriously affected the fairness, integrity, or public reputation of appellant's judicial proceedings.").  The reasoning of Abreu is applicable here.

### III.  CONCLUSION

Accordingly, for the reasons set forth above, the judgment of the district court is AFFIRMED.

Entered for the court

Robert Henry
Circuit Judge

13