2002-NMCA-081

51 P.3d 1159

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Nolando NESWOOD, Defendant–
Appellant.**

**No. 20,920.**

Court of Appeals of New Mexico.

April 9, 2002.

Certiorari Denied, No. 27,576,
July 18, 2002.

506

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} Nolando Neswood (Defendant) appeals his conviction of four counts of criminal sexual contact of a minor contrary to NMSA 1978, § 30–9–13 (2001). He raises three issues arguing that the trial court erred (1) in allowing social workers to testify about his confession in violation of the social worker-client privilege, (2) in allowing the State's expert to testify without properly establishing the scientific reliability of her testimony, and (3) in allowing the expert to comment on the child's veracity thus invading the province of the jury. Defendant failed to preserve his first two arguments. As to the third argument, we affirm the trial court and hold that the State's expert testimony did not invade the province of the jury.

## BACKGROUND

{2} Child lived with her three siblings, her Mother, and her stepfather, Defendant. In late July 1997, Child, who was twelve, attempted suicide by taking an overdose of Tylenol. She was taken to the emergency room where she told three paramedics, a nurse, a social worker, and an investigator from the district attorney's office that she tried to kill herself because Defendant had been molesting her. In a videotaped interview with a criminal investigator from the district attorney's office, Child described the abuse. It began on a Sunday morning when she was eleven years old and Defendant touched her breasts and vaginal area when he was waking her up for church. Subsequent touching of her breasts and vaginal area occurred when Defendant came into her bedroom on the pretense of putting covers over her when she was already asleep. Child complained to Mother who spoke to Defendant; the molestation ceased briefly only to start up again. The last event occurred on the Sunday before Child attempted suicide when Defendant again touched her breasts while waking her up for church.

{3} Mother told the criminal investigator that Child had complained to her about Defendant's sexual abuse and that Mother had told Defendant to stop and had suggested counseling. She thought the abuse had ceased. Mother stated that she was shocked when her daughter told her that the abuse had resumed.

{4} The family was immediately referred to Children, Youth and Families Department (CYFD). A few days after the suicide attempt, Defendant walked into the CYFD office unscheduled and without an appointment. He told social worker, Jennifer McGill (McGill) and social worker supervisor, Rita Galindo–Noriega (Galindo–Noriega), that he was attracted to his stepdaughter and had molested her. He asked for help.

{5} Defendant filed a motion to suppress any statements he made to the social workers claiming the statements were privileged under Rule 11–509 NMRA 2002. In its response, the State argued that the statements were not confidential because the social workers told Defendant that his statements would be given to the district attorney's office and, further, that the statements did not take place during a preliminary inquiry as required by Rule 11–509. The trial court denied Defendant's motion to suppress.

{6} At trial, Child recanted her prior statements and explained that she had accused Defendant of molesting her because she was angry with him, she did not like him, and she wanted him to live somewhere else. Pauline Lucero Esquibel (Esquibel) testified as the State's expert witness in child abuse and explained generally how and why recantation occurs. Defendant made no objection to the State's offering Esquibel as an expert in child abuse under Rule 11–702 NMRA 2002. Later, after Esquibel had testified about recantation in child abuse cases, Defendant objected arguing that she was not qualified to testify as an expert in this area. The trial court overruled Defendant's objection.

## I. Social Worker Privilege

{7} On appeal, Defendant argues that the statements he made to the social workers are privileged relying on NMSA 1978, § 61–31–24 (1989) and *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The State contends that neither argument was made to the trial court. We agree.

{8} In response to the State's argument that Defendant made no reference to Section 61–31–24 at the trial court level, Defendant points to the discourse that took place before the social workers testified. Galindo–Noriega told the trial court that, according to an attorney for CYFD, the social workers in this case could not testify unless so ordered by the trial court and, if so ordered, the courtroom had to be cleared because of the confidentiality of the information. Defendant then renewed his objection to the testimony of the social workers. Although he did not specifically cite to Rule 11–509, the context of the argument indicates that he was relying on Rule 11–509. The trial court asked for a statutory citation in support of Galindo–Noriega's position; she could not cite to a specific statute and neither the State nor Defendant provided any assistance. The trial court asked Galindo–Norie-

ga if she wanted to contact the CYFD attorney. Once the trial court indicated that it was ordering the social workers to testify but would not clear the courtroom, Galindo–Noriega testified; she did not follow up on the trial court's offer to allow her to call the CYFD attorney. It is clear that the trial court was not alerted to Section 61–31–24. Neither the motion to suppress nor the order denying the motion makes any reference to this Section. Because Defendant failed to preserve the issue of a social worker-client privilege under Section 61–31–24, Defendant cannot now argue this error. *State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (stating that an objection below must be made to invoke an intelligent ruling by the court for an issue to be preserved).

{9} Similarly, Defendant did not cite to *Jaffee* at trial, in his motion to suppress, or in the order denying the motion. Consequently, we decline to address this argument on appeal because it was not preserved below. *Lucero*, 104 N.M. at 590, 725 P.2d at 269.

■ {10} While Defendant argued Rule 11–509 as the basis for the social worker-client privilege at trial, he abandoned this argument on appeal. In Defendant's brief in chief, Rule 11–509 is mentioned in the statement of facts and then cited only in a footnote. The footnote sets out the text of Rule 11–509 as amended after Defendant's trial; the rule in effect at the time of Defendant's trial is not contained in the brief. This footnote cite is the only legal reference to Rule 11–509 that is made in the entire appellate brief and there is no actual argument with regard to how it applies to this case. Defendant has therefore waived his appeal on the denial of the motion to suppress by not arguing Rule 11–509 on appeal. *C & H Constr. & Paving Co. v. Citizens Bank*, 93 N.M. 150, 167, 597 P.2d 1190, 1207 (Ct.App.1979) (failing to argue that the trial court erred in denying motion, plaintiff-appellant "is deemed to have abandoned its attack on the trial court's ruling concerning these issues").

## II. Expert Witness Testimony

{11} Defendant makes two separate arguments regarding expert witness testimony.

The first relates to the scientific reliability of Esquibel's testimony and the second to her opinion as improperly commenting on the veracity of the witness.

### A. Scientific Reliability

■ {12} With regard to the first, Defendant argues that Esquibel was not qualified to testify as an expert witness on the subject of recantation because she could not verify or explain the principle assumptions underlying her expert opinion. *See* Rule 11–702; *State v. Torres*, 1999–NMSC–010, ¶ 23, 127 N.M. 20, 976 P.2d 20; *State v. Alberico*, 116 N.M. 156, 166–67, 861 P.2d 192, 202 (1993). The State argues that the issue was not preserved. We agree.

{13} At the beginning of her testimony, Esquibel related her experience in the field of child abuse. The State moved that Esquibel be accepted as an expert in the area of child abuse. Defendant had no objection and did not conduct any voir dire. The trial court qualified Esquibel under Rule 11–702 to testify as an expert in child abuse. The State asked her a series of questions "specifically in the area of recantation." She listed numerous reasons why a child would recant a previous disclosure of sexual abuse and explained that recantation generally depends on what happens after the child makes the first disclosure.

{14} The State then asked Esquibel about the Child's specific situation, and Defendant objected. In argument, outside the presence of the jury, Defendant conceded that Esquibel's testimony could be useful in terms of providing general knowledge about recantation but argued that Esquibel could not "try to apply that to the facts of this specific case." Defendant was unable to show a basis for his objection, other than to describe a case dealing with post-traumatic stress syndrome, apparently *Alberico*, 116 N.M. at 156, 861 P.2d at 192. Actually, Defendant again conceded that Esquibel "can … testify to the general characteristics but … cannot apply that to the specific facts of the case. That is just not allowed."

{15} The trial court reviewed the factors listed in *Alberico*, 116 N.M. at 166–67, 861

P.2d at 202. It held that Esquibel was qualified as established by her testimony and by the fact that Defendant had not objected to her qualifications. The trial court then determined that expert testimony would assist the trier of fact because the jury would need some assistance in determining why children recant testimony. As to the requirement for "scientific, technical or other specialized knowledge" the trial court asked the State to address that issue. The State explained that it would ask Esquibel additional questions in the area of expertise and then argued that she should be allowed to answer a question regarding the probability of recantation in this particular case. Defendant conceded a third time that Esquibel's testimony "could be useful in terms of giving general knowledge about recantation, about the general characteristics of abused children," but again objected to any opinion by Esquibel about the specific facts of this case. The trial court responded that it would need more testimony in order to determine if Esquibel had the "scientific, technical, or specialized knowledge" necessary to allow her to be "specific in this case." During this exchange, Defendant was clearly not objecting to Esquibel's testimony regarding recantation in general but rather to testimony that she might provide about recantation related to Child in this case.

{16} Esquibel continued with lengthy testimony which also included information about her training and experience in the particular area of recantation. Only after this testimony did Defendant ask to voir dire the witness on the subject of recantation stating that Esquibel was "beginning to attempt to provide expert testimony on the subject of recantation where no foundation has been laid that she has any expertise in that area." During the voir dire, Defendant focused on the fact that Esquibel had not conducted any scientific studies of her own, that she had not written any articles on the topic and that she could not explain the scientific basis for the studies she used without having to review them while on the stand. After the voir dire, Defendant asked for a ruling stating that he did not believe that "this person is an expert in the area of recantation and child sexual abuse cases ... as ... required under New

Mexico law." The trial court overruled Defendant's objection and the State asked Esquibel several more questions about recantation in general. Esquibel responded with answers that amplified her previous testimony. When the State tried to elicit testimony regarding Child's specific situation, the trial court sustained Defendant's objection.

{17} It is clear from the record that Defendant's first objection was directed at prohibiting the State from allowing Esquibel to testify about Child's specific recantation in this case. In fact, up to the time Defendant requested voir dire, he had conceded that evidence regarding recantation in general was admissible. While Defendant argues that the objection made after the voir dire questioned the scientific reliability of Esquibel's testimony, we are not convinced Defendant sufficiently alerted the trial court to apply the test to Esquibel's testimony regarding recantation in general, especially in light of Defendant's position that evidence regarding recantation in general was admissible. Even if Defendant had properly alerted the trial court, the objection was not timely made.

{18} Rule 11–103(A)(1) NMRA 2002 requires that objections be timely. Generally, evidentiary objections must be made at the time the evidence is offered. *United States v. Nathan J.,* 127 F.3d 1110 (10th Cir.1997) (unpublished disposition). By the time Defendant made this particular objection, Esquibel had already testified about several types of situations and circumstances that would likely make a child recant a previous disclosure. In this case, the horse was already out of the barn when Defendant tried to shut the door; the jury had already heard a great deal of evidence about recantation before the objection was made. Defendant should have objected immediately after the subject of recantation was brought up. *See Powell v. Burns,* 763 F.2d 337, 338 (8th Cir.1985) (holding objection on grounds of relevance and materiality was untimely where plaintiff failed to object until after officer had already answered a number of questions on the subject); *cf. George M. Morris Constr. Co. v. Four Seasons Motor Inn, Inc.,* 90 N.M. 654, 657–58, 567 P.2d 965,

**510**

968–69 (1977) (holding that objection to evidence regarding lien waivers was untimely when intervenors raised the issue during cross-examination but failed to object until the end of redirect). Therefore, we decline to review this argument as Defendant's objection was untimely. We express no opinion as to the admissibility of this type of evidence had the objection been timely made.

### B. Comment on Veracity

 {19} Defendant's second argument is that Esquibel invaded the province of the jury because her characterization of Child's testimony was really an impermissible comment on Child's veracity. Defendant cites to *State v. Moran*, 151 Ariz. 378, 728 P.2d 248 (1986), where the court held that the expert's testimony, stating the behavior of the victim after the alleged abuse proved the crime occurred, was inadmissible and an invasion of the province of the jury. *Id.* at 255; *see also Wheat v. State*, 527 A.2d 269, 274–75 (Del. 1987) (holding inadmissible the use of expert testimony to evaluate the complainant's credibility). Defendant's legal proposition is correct. Determining credibility is not a function of an expert but is an issue reserved for the jury. *Moran*, 728 P.2d at 255. However, a review of the evidence does not support Defendant's position that Esquibel gave her opinion regarding Child's credibility or whether the abuse actually occurred. During the conference outside the presence of the jury, Defendant told the trial court that "an expert . . . cannot comment on the veracity of a witness" and the trial court agreed. The trial court then directed Defendant to object when an improper question was asked and the trial court would rule on the issue at that time. When the State began a question which appeared to be asking Esquibel for an opinion regarding this particular case, Defendant objected. The trial court sustained the objection. The record reveals that Esquibel never testified that one or the other of Child's statements was true and never made any comment on Child's credibility. Esquibel's testimony was limited to information regarding recantation in general, leaving the ultimate question of credibility to the jury.

### CONCLUSION

{20} Defendant failed to preserve any issue regarding applicability of the social worker-client privilege, and also failed to preserve the issue of whether Esquibel's testimony passed *Alberico/Torres* muster. Esquibel's testimony did not invade the province of the jury. The case is affirmed.

{21} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and JONATHAN B. SUTIN, Judges.