This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. A-1-CA-34380**

**DEMETRIO STOGDEN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Jerry H. Ritter, Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline Rose Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1}     Defendant appeals from a jury verdict convicting him of one count of conspiracy to commit aggravated assault with a deadly weapon in violation of NMSA 1978, Section 30-3-2(A) (1963) and NMSA 1978, Section 30-28-2 (1979), conspiracy to commit shooting at or from a motor vehicle, not resulting in great bodily harm, in violation of NMSA 1978, Section 30-3-8(B) (1993) and Section 30-28-2, and receipt, transportation or possession of a firearm by a felon in violation of NMSA 1978, Section 30-7-16 (2001).[1] Defendant argues: (1) two conspiracy convictions arising from only one agreement between he and his passenger to fire shots at Victim violate double jeopardy; (2) the district court abused its discretion in permitting cross-examination and closing argument concerning Defendant's gang affiliation; (3) fundamental error resulted from the prosecutor's comments during closing argument that Defendant invoked the Fifth Amendment during cross-examination; and (4) fundamental error resulted from giving the instruction on the definition of constructive possession. We affirm in part and reverse in part. Because this is a memorandum opinion and the parties are familiar with the facts and procedural posture of the case, we set forth only such facts and law as are necessary to decide the merits.

**BACKGROUND**

---

[1]Note that Section 30-7-16 was amended at N.M. Laws 2018, ch. 74, but the amendment was not in place at the time this case arose, so Defendant's claim and our analysis is governed by the 2001 version of the statute.

{2} Defendant's charges stemmed from an incident during which gunshots were fired from a vehicle driven by Defendant at another vehicle being driven by Victim.

**DISCUSSION**

**I.  Defendant's Multiple Convictions for Conspiracy Violated Double Jeopardy**

{3} Defendant was convicted of both conspiracy to commit aggravated assault with a deadly weapon and conspiracy to commit shooting at or from a motor vehicle stemming from the drive-by-shooting. Defendant argues, and the State agrees, that one conspiracy conviction against Defendant should be vacated on double jeopardy grounds, pursuant to *State v. Gallegos*, 2011-NMSC-027, 149 N.M. 704, 254 P.3d 655. We agree.

{4} Double jeopardy presents a question of law subject to de novo review on appeal. *Id.* ¶ 51; *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737 ("We generally review double jeopardy claims de novo. However, where factual issues are intertwined with the double jeopardy analysis, we review the trial court's fact determinations under a deferential substantial evidence standard of review." (citations omitted)).

{5} In *Gallegos*, our Supreme Court determined that based on the "text, history, and purpose of our conspiracy statute . . . the Legislature established . . . a rebuttable presumption that multiple crimes are the object of only one, overarching,

3

conspiratorial agreement subject to one, severe punishment set at the highest crime conspired to be committed." 2011-NMSC-027, ¶ 55. "At trial, the state has an opportunity to overcome the Legislature's presumption of singularity, but doing so requires the state to carry a heavy burden." *Id.*

{6} In determining whether the State has overcome the Legislature's presumption of singularity and demonstrated the existence of more than one conspiracy, our Supreme Court has adopted a multi-factor totality of the circumstances test used by federal courts. *Id.* ¶¶ 42, 56. The factors used to determine the number of agreements are whether:

> (a) the location of the two alleged conspiracies is the same; (b) there is a significant degree of temporal overlap between the two conspiracies charged; (c) there is an overlap of personnel between the two conspiracies (including unindicted as well as indicted co[-]conspirators); and (d) the overt acts charged and (e) the role played by the defendant in the alleged conspiracies are similar.

*Id.* ¶ 42, 56 n.3 (stating that "[w]hile New Mexico law does not require the existence of an overt act, our courts may still rely on this factor to help determine whether a defendant entered into one or more conspiratorial agreements" (alterations, internal quotation marks, and citation omitted)).

{7} The evidence at trial was that during the month of January 2013 Defendant was living in a house owned by Stacy Northrup and her husband, Robert Northrup, both of whom were in custody at the time. Victim was related to the Northrups. On the day

4

of the shooting, Defendant was involved in two confrontations with members of the Northrup family. During the second confrontation, members of the Northrup family attempted to forcefully enter the home. Victim was present, made eye contact with Defendant, and may have confronted Defendant in the backyard of the house. The Northrups called the police for assistance in ejecting Defendant from the house, but left after the police confirmed that Stacy Northrup had given Defendant permission to reside in the house.

{8} Later that evening, Defendant drove to pick up an unidentified passenger, and they discussed Defendant's confrontations with the Northrups and the police. Defendant and his passenger saw Victim driving and proceeded to follow him, paralleling and tailgating Victim. Shots were then fired from Defendant's vehicle that struck Victim's vehicle. After the shots were fired, Defendant and his passenger left the scene. Live rounds were found in the back of Defendant's vehicle.

{9} Applying the totality of circumstances test to these facts, we conclude that the evidence at trial established the existence of only one conspiracy. First, the location of the two charged conspiracies was the same and overlapped temporally. The direct and circumstantial evidence showed that the agreement between Defendant and his passenger to shoot at Victim from within Defendant's vehicle was formed at the same time while Defendant and his passenger drove together discussing Defendant's

5

confrontations with Victim and Victim's family earlier that day. *See State v. Trujillo*, 2002-NMSC-005, ¶ 62, 131 N.M. 709, 42 P.3d 814 (stating that the "agreement" necessary to establish a conspiracy "may be established by circumstantial evidence"). Second, the personnel involved in both charged conspiracies, Defendant and his passenger, were the same. Finally, the overt acts and Defendant's role in the two charged conspiracies were the same. Specifically, Defendant's role in both of the charged conspiracies was to function as the driver of the vehicle from which shots were to be fired at Victim, following Victim, paralleling and tailgating Victim's vehicle, and positioning the vehicle in a manner in which shots could be fired at Victim.

**{10}** Under these facts, we conclude that Defendant's convictions for conspiracy to commit aggravated assault and conspiracy to shoot at or from a motor vehicle violated Defendant's right to be free from double jeopardy. As such, one of Defendant's conspiracy convictions, both of which were predicated upon fourth degree felonies, must be reversed. *See* Section 30-3-2 ("Whoever commits aggravated assault is guilty of a fourth degree felony."); Section 30-3-8(B) ("Whoever commits shooting at or from a motor vehicle that does not result in great bodily harm to another person is guilty of a fourth degree felony.").

**II.    Admission of Evidence and the Prosecutor's Closing Argument Concerning Defendant's Gang Affiliation**

**{11}**     Relying on Rules 11-403, 404 NMRA, Defendant next claims that the district court abused its discretion "in permitting extensive cross-examination [of him] and closing argument concerning [his] gang affiliation given the lack of evidence that the shooting was gang-related[.]" The State responds that this claim was not preserved. We agree.

**{12}**     Rule 11-103(A)(1)(a) NMRA requires that in order to preserve a claim for error, a party must make a timely objection. "Generally, evidentiary objections must be made at the time the evidence is offered." *State v. Neswood*, 2002-NMCA-081, ¶ 18, 132 N.M. 505, 51 P.3d 1159.

**{13}**     Here, during direct examination, Defendant testified that he would not name his passenger because the passenger is a "knucklehead, and if I was to bring up his name, I wouldn't want no harm to my mom or family." During cross-examination, the prosecutor explored Defendant's reasons for refusing to identify his passenger, which included questions concerning Defendant's gang affiliation. Without objection, Defendant testified that he had been affiliated with the East Side Locos gang and that he had disclosed this fact to law enforcement in association with their investigation into the shooting. Defendant further testified, without objection, that he was still affiliated with the East Side Locos gang on the night of the shooting. When defense counsel did finally object to the prosecutor's question "Now what does the term gang-

7

banging mean to you as a gang member?", Defendant had already conceded that gang members adhere to a "credo" of "[n]ever snitch[ing.]"

{14} Under these circumstances, "the horse was already out of the barn when [the d]efendant tried to shut the door" to the jury hearing evidence of his gang affiliation. *See Neswood*, 2002-NMCA-081, ¶ 18. Defendant should have objected immediately to the prosecutor's inquiry into Defendant's history as a gang member. Defendant, by his testimony on direct, opened the door to cross-examination concerning his gang affiliation. Furthermore, defense counsel's objection to the prosecutor's cross-examination on this issue was untimely and therefore will not be considered for the first time on appeal. *See State v. Gilbert*, 1983-NMSC-083, ¶ 30, 100 N.M. 392, 671 P.2d 640 ("A defendant cannot be heard to complain on appeal that he was prejudiced by evidence which he introduced into the case.").

{15} Defendant also takes issue with the prosecutor's reference to the evidence of Defendant's gang affiliation in closing argument. The prosecutor argued that the case was about "disrespect. Not in our eyes; in the eyes of an [East Side Locos] gang member" and what disrespect means to them. The prosecutor continued, "Do we understand how gangsters act, feel, what things mean? Do they understand the innocent public. Absolutely not." The prosecutor later referenced the evidence of Defendant's gang involvement as "disturbing." Defendant did not object to these

8

statements; he therefore, failed to preserve a claim of error for appeal. *See* Rule 11-103(A)(1)(a); *Neswood*, 2002-NMCA-081, ¶ 18.

**III.    The Prosecutor's Comments in Closing Argument Concerning Defendant's Invocation of the Fifth Amendment Did Not Give Rise to Fundamental Error**

{16}    Defendant claims next that "[f]undamental error arose when the prosecutor argued during closing argument that [Defendant] invoked his Fifth Amendment privilege against self-incrimination[.]"

{17}    "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. Error that is fundamental:

> must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.

*Id.* (internal quotation marks and citation omitted). "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial. An isolated, minor impropriety ordinarily is not sufficient to warrant reversal, because a fair trial is not necessarily a perfect one." *Trujillo*, 2002-NMSC-005, ¶ 52 (internal quotation marks and citation omitted); *see State v. Sosa*, 2009-NMSC-056, ¶ 35, 147

9

N.M. 351, 223 P.3d 348 ("Fundamental error occurs when prosecutorial misconduct in closing statements compromises a defendant's right to a fair trial[.]").

{18}     We first give context to the claim. In his opening statement, defense counsel told the jury that Defendant's passenger was the individual who fired the gun at Victim and:

> unfortunately or otherwise [Defendant] lives by a code of conduct and would not and has not provided the name of his passenger, even though it would enable the government to actually charge the guy who did this and it would answer questions put to [Defendant] repeatedly [by law enforcement].

As stated above, during direct examination, Defendant refused to identify his passenger. On cross-examination, when asked to identify his passenger, Defendant testified that he was pleading "the Fifth." Defendant answered yes to a follow-up question by the prosecutor regarding whether he refused to "snitch" on his passenger out of fear of getting in "trouble or hurt." Defendant also stated on multiple occasions during cross-examination that the reason he would not identify his passenger was because he did not want anything to happen to his family.

{19}     During closing argument, the prosecutor referred to Defendant's testimony that he was pleading the "Fifth" to revealing the identity of his passenger, arguing that:

> In the context of [Defendant's] refusal to give you information, he feigned. And we knew this from the beginning of this trial, the defense told us he's not going to tell. He's not going to reveal the passenger's name. And I guess the question is why does that matter to you in the

10

determination of the [Defendant] shooting the gun. Well, its called a . . . hide the ball situation. He pleaded the Fifth. The Fifth. We all watch TV. The Fifth means that I don't have to say something that will . . . cause me to be found guilty. . . . And when I asked him, so by revealing your passenger's name, that will provide the State with evidence against you—yeah.

Defense counsel objected, arguing that the prosecutor's characterization of Defendant's testimony—that Defendant pleaded the Fifth to avoid incriminating himself—was inaccurate since Defendant also testified that he was pleading the Fifth to avoid incriminating his passenger.

{20} The district court said that if Defendant "truly sincerely pled the Fifth," the prosecutor could not argue it in closing, but that he did not believe that Defendant "truly sincerely pled the Fifth." The prosecutor responded that even assuming Defendant did actually intend to invoke his Fifth Amendment privilege against self-incrimination, Defendant waived the privilege by taking the stand. Defense counsel answered that "we know that [Defendant] is not a legal scholar. He may have said something out of relative ignorance about pleading the Fifth, but he was given an opportunity to clarify what he meant by that. He clearly said he meant if he revealed the identity of the passenger, it would incriminate the passenger." Overruling the objection, the district court stated that the prosecutor was entitled to argue the evidence, including Defendant's statements, "contradictory as they are." The

prosecutor proceeded to argue that Defendant was hiding behind a code of silence that gang members have in order to keep evidence from the jury.

{21}    We begin by acknowledging that Defendant's cross-examination testimony pleading the "Fifth" was unclear about whether he intended to invoke his Fifth Amendment privilege against self-incrimination or instead meant only to convey that he was refusing to answer the prosecutor's question concerning the identity of his passenger. But even assuming that Defendant did intend to invoke his Fifth Amendment privilege against self-incrimination, as the State argued below and in its brief on appeal, Defendant waived the privilege and opened himself to cross-examination on matters reasonably related to his direct testimony by taking the stand and testifying in his own defense, including his reasons for not identifying his passenger. *See State v. Allen*, 1978-NMCA-054, ¶ 16, 91 N.M. 759, 581 P.2d 22 (stating that "[e]xcept as limited by our evidence rules, a defendant waives his privilege against self-incrimination when he testifies on his own behalf . . . [; and the d]efendant cannot claim the privilege against self-incrimination on matters reasonably related to the subject matter of his direct examination, and this includes impeachment by proof of prior convictions and the like").

{22}    Additionally, it is well-established that "[d]uring closing argument, both the prosecution and defense are permitted wide latitude, and the trial court has wide

discretion in dealing with and controlling closing argument." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254 (internal quotation marks and citation omitted). This rule is limited by the requirement that prosecutors' "remarks . . . must be based upon the evidence or be in response to the defendant's argument." *Id.*

{23} Defendant testified during direct examination that he would not identify his passenger. On cross-examination, Defendant continued to refuse to identify his passenger, pleading the "Fifth" in one instance, citing fear of getting in "trouble or hurt" in another, and in order to protect his mother and family in yet another instance. Under these facts, the prosecutor's reference to Defendant pleading the "Fifth" in closing argument was not improper. The reference was based on Defendant's cross-examination testimony, admitted with no objection, concerning Defendant's reasons for not identifying his passenger, and neither went to the foundation of the case nor deprived Defendant of a fair trial.

{24} Accordingly, we reject Defendant's claim of fundamental error under this point.

**IV. The Instruction on Constructive Possession Did Not Give Rise to Fundamental Error**

{25} Defendant's final claim is that giving the jury an instruction on constructive possession as set forth in UJI 14-130 NMRA amounted to fundamental error. Defendant did not object to the giving of this instruction to the jury. However, Defendant now argues that "[t]here was no evidence of an agreement for [Defendant]

13

to possess or exercise control over the gun used by the passenger" to shoot at Victim. Without any such evidence, Defendant contends, "instructing the jury on constructive possession of a firearm[, pursuant to UJI 14-130] permitted it to find [Defendant] was guilty of being a felon in possession simply for conspiring with" passenger to shoot at Victim. We disagree.

{26} "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citations omitted). "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *Barber*, 2004-NMSC-019, ¶ 8. "An error is fundamental when it goes to the foundation or basis of a defendant's rights." *State v. Anderson*, 2016-NMCA-007, ¶ 8, 364 P.3d 306 (internal quotation marks and citation omitted). This Court "will not uphold a conviction if an error implicated a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Id.* (internal quotation marks and citation omitted omitted).

{27} "For fundamental error to exist, the instruction given must differ materially from the uniform jury instruction, omit essential elements, or be so confusing and incomprehensible that a court cannot be certain that the jury found the essential

elements under the facts of the case." *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775 (internal quotation marks and citations omitted). Whether a particular jury instruction was properly given "is a mixed question of law and fact" that the appellate courts review de novo. *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted).

{28}    Under the facts we have already described, the jury's receipt of UJI 14-130 possession did not give rise to fundamental error. The instruction merely informed the jury on the elements of constructive possession of the firearm in the vehicle. The fact that the firearm may not have been on Defendant's person or Defendant actually did not fire shots at Victim does not negate possession as a matter of law. *See State v. Jimenez*, 2017-NMCA-039, ¶ 48, 392 P.3d 668 (holding that "the [s]tate may proceed on a theory of constructive possession, whereby it must prove that, even if the firearm is not in [d]efendant's physical presence, he knows what it is and where it is and he exercises control over it" (alterations, omission, internal quotation marks, and citation omitted)).

**CONCLUSION**

{29}    We affirm in part and reverse in part. We therefore remand to the district court to vacate of one of Defendant's conspiracy convictions in accordance with this opinion.

15

{30}   **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**STEPHEN G. FRENCH, Judge**