# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  February 17, 2015

**NO. 32,277**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**AUGUSTINE TAPIA**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

{1}    Defendant appeals his conviction for five counts of criminal sexual penetration of a minor (CSPM), five counts of criminal sexual contact of a minor (CSCM), and four counts of kidnapping. He asserts: (1) there was insufficient evidence presented at trial to support all but one of his convictions for CSPM and CSCM; (2) the State failed to prove two counts of CSPM were separate and distinct from one another; (3) the conduct charged as kidnapping was incidental to sexual assault and not a separate crime; (4) the jury instructions were contradictory, resulting in fundamental error; and (5) the district court erred by allowing a non-expert witness to testify that her findings were consistent with sexual abuse. We affirm in part, reverse in part, and remand for resentencing in accordance with this Opinion.

**BACKGROUND**

{2}    Defendant's convictions are a product of multiple instances of sexual assault perpetrated against his eight-year-old daughter, H.T., and his four-year-old step-daughter, L.T. Both victims testified at trial, as did the physician's assistant (the PA) who examined the girls following the sexual assaults. Due to the numerous counts of conviction and the many issues on appeal, we reserve further discussion of the underlying facts for the accompanying analysis.

**CSPM CONVICTIONS**

{3}     A jury convicted Defendant of six instances of CSPM: Counts 2, 8, 11, 12, and 13.[1] Counts 2 and 13 charged Defendant with digitally penetrating the vaginas of L.T. and H.T., respectively. Count 8 charged Defendant with engaging in anal intercourse with H.T. Counts 5, 7, 11, and 12 arose from Defendant engaging in what constitutes the statutory definition of "sexual intercourse" with L.T. and H.T.

{4}     Defendant appeals his CSPM convictions on Counts 2, 8, 11, and 13, asserting that there was insufficient evidence presented at trial to support digital vaginal penetration, anal penetration, or "sexual intercourse."[2] Our sufficiency of the evidence review is a two-step process: we first view the evidence in the light most favorable to the verdict, and then we legally determine "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 1994-NMSC-121, ¶ 6, 118 N.M. 762, 887 P.2d 756 (internal quotation

---

[1]Following the district court's dismissal of some counts prior to submission to the jury, the remaining seventeen counts were renumbered consecutively. Within this opinion, we numerically refer to the counts as each was renumbered.

[2]Although Count 12 is identically worded to Count 11 in that it alleges that Defendant engaged in "sexual intercourse" with H.T., we note that Defendant does not appeal this conviction. Therefore, we will not address it in our analysis. *See City of Santa Fe v. Komis*, 1992-NMSC-051, ¶ 22, 114 N.M. 659, 845 P.2d 753 ("Issues not briefed will not be reviewed by this Court.").

marks and citation omitted). We do not reweigh the evidence, nor will we substitute our judgment for that of the fact finder so long as the record contains sufficient evidence to support the verdict. *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "Where . . . a jury verdict in a criminal case is supported by substantial evidence, the verdict will not be disturbed on appeal." *Id.*

{5}     "Criminal sexual penetration" as defined by NMSA 1978, Section 30-9-11(A) (2009), in relevant part, is "the unlawful and intentional causing of a person to engage in sexual intercourse . . . or the causing of penetration, to any extent and with any object, of the genital or anal openings of another[.]" UJI 14-982 NMRA defines "sexual intercourse" as "the penetration of the vulva or vagina, the female sex organ, by the penis . . . to any extent." The "vulva" is defined as "the external parts of the female organ of sexual intercourse[,] . . . composed of the major and minor lips, the clitoris and the opening of the vagina[,]" and the "vagina" is "the canal or passage for sexual intercourse in the female, extending from the vulva to the neck of the uterus." UJI 14-981 NMRA.

**A.     Counts 2 and 13: Digital Vaginal Penetration**

{6}     The State alleged in Counts 2 and 13 that Defendant penetrated the vaginas of L.T. and H.T., respectively, with his finger. At trial, L.T. testified that one night when she was alone in the living room with Defendant, he "rubbed" her "privates" with his

hand. L.T. did not provide any additional details about specifically how or where Defendant touched her. The PA who examined L.T. for evidence of sexual abuse, later that same day, testified that she observed redness on L.T.'s labia majora and minora, including a small scratch to the right labia minora. The PA indicated that her observations could be the result of sexual abuse, L.T.'s underwear being too tight, scratching herself, "or something like that." Similarly, as to Count 13, H.T. testified that Defendant would "slide his fingers up and down on [her] private part." H.T. elaborated that Defendant would not move his fingers "in and out" but "up and down." When the PA examined H.T. several days later, she did not observe any injuries.

{7} As to each count, the jury was instructed that in order to find Defendant guilty of CSPM, it must find that the State proved that Defendant "caused the insertion, to any extent, of a finger into the vagina" of L.T. and H.T. Although it was instructed as to the statutory definitions of both "vagina" and "vulva," the jury was not told that penetration of the latter was sufficient to find Defendant guilty of either or both counts. Defendant contends that this exclusion is fatal to the convictions. The State answers that use of the term "vagina" in the jury instructions for Counts 2 and 13 was sufficient to support convictions for CSPM premised upon the testimony of L.T. and H.T. because "vagina" as contained in the jury instruction "was meant to convey not

4

just the vaginal canal but rather the area of the vulva or genital openings of the female." The State relies on this Court's clarification in *State v. Tafoya* that the definition of sexual intercourse, as contained within the jury instruction for CSPM, includes not only penetration of the vagina but of the vulva as well. 2010-NMCA-010, ¶ 52, 147 N.M. 602, 227 P.3d 92.

{8}   It is true that in *Tafoya*, we held that the definition of "sexual intercourse" includes penetration not just of the vagina, but also of the vulva; thus, we concluded that the CSPM statute was meant to be inclusive of the "broader sense of the female genitalia as opposed to just the vaginal canal." *Id*. Indeed, the statutory definition of vagina is inclusive of the vulva. *See* UJI 14-981 (stating that the "vagina" is "the canal or passage for sexual intercourse in the female, extending from the vulva to the neck of the uterus"). Our holding in *Tafoya* in no way altered the anatomical definition of "vulva" and "vagina" as defined by our Supreme Court, *see* UJI 14-981, when it amended UJI 14-982 (2010), nor do we view *Tafoya* as requiring anatomical specificity in every case in which the sexual organs of a child have been penetrated to the slightest degree. *Compare* UJI 14-982 (2009) with UJI 14-982 (2010) (modifying the definition of sexual intercourse to include penetration of the vagina as well as the vulva). To the contrary, the statutory language clearly instructs that CSPM occurs if the Defendant engaged in an act of "penetration[] to any extent."

5

Section 30-9-11(A). Although there may be circumstances of a given case that warrant scrutiny of particular parts of the genitalia, pursuant to the sufficiency of the evidence standard of review, we review the evidence in the light most favorable to the verdict this jury rendered. *See Sutphin*, 1988-NMSC-031, ¶ 21 (stating that under a sufficiency of the evidence standard of review, we "must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict").

{9}     Moreover, at trial Defendant elected not to challenge the CSPM charges against him based upon any absence of definitional distinctions, but rather upon the victims' lack of credibility and the factual impossibility of the occurrences of the charged crimes. Defendant's closing argument was premised upon the difficulty of defending this case, stating "how does one . . . explain [that] a child isn't being truthful[?] We all want to believe that a child wouldn't lie about something like this[.]" Yet Defendant now argues that the evidence and the inferences from the evidence do not support the jury verdict, not from the standpoint of non-occurrence, but from the asserted failure of the State to present evidence of precisely which portion of the victims' genitalia were penetrated by his fingers. When reviewing the presence or absence of substantial evidence on appeal, however, we need not be so anatomically exacting. Here, the nature of the acts testified to by both victims involved physical

6

interaction that was skin to skin, and during which Defendant rubbed or repetitiously slid his fingers upon both child's unclothed genital openings. Moreover, given that L.T. and H.T. were seven and eleven years old at the time they testified, respectively, it would be unwise for us to establish within our caselaw any requirement that the trial record reflect comprehension of anatomic specifics or the technical nuances of what constitutes penetration under the applicable jury instruction. Applying the definitions of vagina and vulva in light of the requirement that penetration minimally occur to any extent, the testimony given by both victims, and the PA as to L.T., was sufficient to allow a jury to utilize its fact finding autonomy to find that the State satisfied its evidentiary burden as to the penetrative element of CSPM within Counts 2 and 13. On the basis of this record as to these Counts, we affirm.

**B.      Count 8: Anal Penetration**

{10}      Count 8 alleged that Defendant engaged in anal intercourse with H.T. At trial, H.T. testified that Defendant "got his private part and put it up where I go poop." On cross-examination when defense counsel sought to determine whether Defendant "put his private on [her] butt . . . or in [her] butt[,]" H.T. clarified that it actually went "in." The jury was instructed that in order to find Defendant guilty of CSPM as to Count 8, the State must prove that Defendant "caused [H.T.] to engage in anal intercourse[.]" It was also instructed that "anal intercourse" is "the penetration of the

7

anus by the penis to any extent" and that the " 'anus' is the opening to the rectum." The jury found Defendant guilty on Count 8.

{11}    On appeal, Defendant contends that CSPM requires penetration of the anal opening, and because H.T. was never "asked whether she understood the difference between penetrating the cheeks of the buttocks and penetrating the anus itself[,]" there was no evidence of physical penetration. Defendant maintains that H.T.'s testimony was "too vague and conclusory to allow the jury to infer beyond a reasonable doubt that [Defendant] penetrated her anus, as opposed to touching her buttocks with his unclothed penis." Defendant relies on *Herron v. State* for the proposition that "[e]vidence equally consistent with two hypotheses tends to prove neither." 1991-NMSC-012, ¶ 18, 111 N.M. 357, 805 P.2d 624.

{12}    It is well established that in "prosecutions for [CSP], the testimony of the victim need not be corroborated and lack of corroboration has no bearing on weight to be given to the testimony." *State v. Nichols*, 2006-NMCA-017, ¶ 10, 139 N.M. 72, 128 P.3d 500 (alterations, internal quotation marks, and citation omitted). Furthermore, "[t]he determination of the weight and effect of evidence, including all reasonable inferences to be drawn from both direct and circumstantial evidence, is reserved for determination by the trier of facts, which in this case is the jury." *State v. Luna*, 1979-NMCA-048, ¶ 15, 92 N.M. 680, 594 P.2d 340. This Court will not

8

weigh the evidence presented during the trial. *Id*. H.T.'s testimony made very clear that Defendant put his penis both "in [her] butt" and "up where [she goes] poop." By its guilty verdict, the jury determined that Defendant penetrated H.T.'s anus. *See State v. Smith*, 2001-NMSC-004, ¶ 40, 130 N.M. 117, 19 P.3d 254 ("Juries are presumed to have followed the written instructions."). We will not substitute our judgment for that of the jury. *Sutphin*, 1988-NMSC-031, ¶ 21. Because evidence within the record is sufficient to support Defendant's conviction for CSPM in Count 8, we affirm.

**C.    Counts 5, 7, and 11: "Sexual Intercourse"**

{13}    Counts 5, 7, and 11 respectively alleged that Defendant committed CSPM by engaging in "sexual intercourse" with H.T. and L.T. The State maintained that Defendant penetrated the labia of both victims with his penis, an act that it termed "labial coitus." For each count, the jury was provided with the CSPM instruction; however, as to Count 5, the jury was alternatively instructed as to CSCM. The jury ultimately found Defendant guilty of CSPM as to H.T. in Count 11 and guilty of CSCM as to L.T. in Count 5. Defendant was acquitted of Count 7.

{14}    Defendant appeals all three counts, arguing that the State failed to prove its theory of labial coitus as neither victim testified that any penetration occurred. Because Defendant was acquitted of Count 7, there is no basis on which to review Defendant's argument. As to Count 5, Defendant was convicted of CSCM, which

9

contains no penetrative element. We therefore need only review Defendant's argument as it pertains to his CSPM conviction in Count 11.

{15}    Regarding Count 11, the jury was instructed that in order to find Defendant guilty, the State must have proven that Defendant "caused [H.T.] to engage in sexual intercourse[.]" The jury was definitionally instructed that "[s]exual intercourse means the penetration of the vulva or vagina . . . by the penis" and that the "vulva" is "the external parts of the female [sex] organ . . . composed of the major and minor lips, the clitoris and the opening of the vagina." Accordingly, to any extent that Defendant's penis penetrated beyond or within H.T.'s labia majora, the outermost lips of the vulva, such would constitute "sexual intercourse" for purposes of CSPM. UJI 14-981; *see* § 30-9-11(A).

{16}    As to Count 11, H.T. testified that she was made to remove her clothing and await Defendant on her mother's bed prior to the first time he sexually assaulted her. Once Defendant had removed his own clothing, he "put his private part on [her private part]" and started moving "up and down." H.T. additionally explained that "every time after he abused [her], he would get up and . . . shake his private part and white stuff would come out." As we have stated, we allow a jury all reasonable inferences in support of a verdict, and we view the evidence in the light most favorable to that verdict. *State v. Haar*, 1990-NMCA-076, ¶ 14, 110 N.M. 517, 797

10

P.2d 306. Under this standard, we conclude there is sufficient evidence for the jury to determine that Defendant's repeated movement of his penis against H.T.'s unclothed genitalia, prior to the emission she witnessed, penetrated the labia majora to the slightest extent or beyond, and thereby met the penetrative element of the "sexual intercourse" CSPM jury instruction. Considered cumulatively, the act described by H.T. was evidence upon which a jury could conclude that penetration "to any extent" took place. Section 30-9-11(A). We will not second guess or substitute our judgment for such a jury's determination of fact, nor require a child victim to utilize specific and exacting terminology in the context of a sexual assault to establish the threshold of abuse a jury must consider given the aggregate testimony provided by such a witness. We affirm Defendant's conviction on Count 11.

**CSCM CONVICTIONS**

**A.    Counts 3 and 4**

{17}    Defendant was charged with two counts of CSCM based on the State's assertion that Defendant twice forced L.T. to place her hand upon his penis. The jury convicted Defendant on both counts. Defendant appeals these convictions, arguing that there was insufficient evidence presented at trial to prove two separate and distinct counts of CSCM. Despite L.T.'s testimony, Defendant maintains that there was insufficient evidence to support the convictions because H.T.'s testimony, that

11

she was present during and perceived the nature of this abuse of L.T., was both self-contradictory and incompetent due to her indirect personal knowledge of the relevant facts.

{18} At the outset, we note that the language within and the jury instructions for both Counts 3 and 4 are identical, requiring conviction only upon the jury's determination beyond a reasonable doubt that Defendant "caused [L.T.] to touch [his] penis . . . [and] [t]his happened in New Mexico on or between the 26th day of July, 2008 and the 12th day of November, 2009." Despite their seeming indistinguishability, L.T. and H.T. provided testimony in support of separate acts of CSCM. *See State v. Dominguez*, 2008-NMCA-029, ¶ 10, 143 N.M. 549, 178 P.3d 834 (sanctioning identically worded counts "[w]hen a child cannot remember specific dates, . . . if the child or other witnesses are able to provide facts sufficient to identify distinct incidents of abuse"). L.T. specifically testified that Defendant "touched [her] privates and then he made [her] touch his." She elaborated, stating that "I touched [his penis] with my hand and then . . . he . . . got my hand and he made [me] touch it and then I pulled my hand off and he kept pulling it back." Similarly, H.T. testified to two incidents where she and L.T. were both in the same room with Defendant. H.T. stated that during both incidents Defendant "made us put . . . our hand on his private part." When asked whether she directly observed L.T. "do that to him[,]" however, H.T.

12

responded that she had not.

{19}     L.T.'s testimony alone is sufficient to establish one count of CSCM. *See Sutphin*, 1988-NMSC-031, ¶ 21. Additionally, H.T.'s testimony served to not only circumstantially corroborate L.T.'s testimony regarding the act Defendant made L.T. perform, but also to establish its occurrence on two occasions. As to the nature of the specific abuse, H.T. testified that Defendant made both her and L.T. touch his penis, but conceded that she did not directly see L.T.'s hand when it touched Defendant's penis. Defendant maintains that if H.T. "subjectively believed but did not actually see [L.T.] being abused, her belief was not competent testimony" under Rule 11-602 NMRA.

{20}     Defendant is correct that our Supreme Court recognizes "[b]elief or opinion testimony alone, no matter how sincere[, not to be] equivalent to personal knowledge" and therefore not admissible evidence. *Martinez v. Metzgar*, 1981-NMSC-126, ¶ 9, 97 N.M. 173, 637 P.2d 1228. But Defendant's argument in this regard is misplaced. H.T. did not testify that she believed, thought, or assumed that L.T. touched Defendant's penis. She stated that on two occasions Defendant "made us put . . . our hand on his private part." The circumstances under which she and L.T. found themselves, which included the individual actions Defendant required of H.T., were described to the jury not as belief or opinion, but as an event of which H.T.

possessed personal knowledge, however imperfect. As to one participant in the events she described, H.T.'s testimony directly corroborated L.T.'s testimony, leaving the jury with both direct and circumstantial evidence upon which it could resolve the separate and distinct questions of fact associated with Counts 3 and 4. *See State v. Sena*, 2008-NMSC-053, ¶ 11, 144 N.M. 821, 192 P.3d 1198 ("When parts of a witness's testimony are conflicting and ambiguous, it is the exclusive province of the jury to resolve the factual inconsistencies in that testimony." (alterations, internal quotation marks, and citation omitted)). Because it is the jury's role to resolve any conflict in witness testimony, and H.T.'s testimony regarding two incidents of contact could justify a finding by a rational trier of fact that Defendant "caused [L.T.] to touch [his] penis" on two separate occasions, we affirm Defendant's convictions of Counts 3 and 4. *See id.*

**JURY INSTRUCTIONS**

{21}     Defendant next requests that we reverse each CSCM and CSPM conviction and remand for a new trial on the basis that the jury instructions defining "sexual intercourse" and "criminal sexual contact" "hopelessly confus[ed]" the jury. Defendant's argument again arises from the alteration in the jury instruction for "sexual intercourse" that followed this Court's decision in *Tafoya*. Prior to *Tafoya*, UJI 14-982 defined "sexual intercourse" as "the penetration of the vagina . . . by the

14

penis . . . to any extent." UJI 14-982 (2009). However, in response to our suggestion that the instruction be modified, our Supreme Court altered it specifically to include "penetration of the vulva or vagina[.]" UJI 14-982 (2010). Defendant asserts that because the CSCM instruction still includes "vagina" as one of the applicable alternative points of contact, it is impossible for a jury to distinguish between CSCM and "sexual intercourse" for the purposes of CSPM because it is impossible to contact the vagina without first penetrating the vulva. UJI 14-909 NMRA.

{22}    Defendant maintains that this instructional error fundamentally undermined his CSPM and CSCM convictions.[3] "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. Fundamental error review serves to safeguard a defendant's substantive rights under two circumstances: (1) "where a defendant has been convicted of a crime despite undisputable innocence" and (2) "when a mistake in process makes a conviction fundamentally

---

[3]We assume Defendant requests fundamental error review on the basis that this asserted objection was not preserved in the district court. *See State v. Castillo*, 2011-NMCA-046, ¶ 29, 149 N.M. 536, 252 P.3d 760 (stating that when a defendant fails to preserve an argument in district court, this Court can only review for fundamental error). Defendant fails to provide a citation to the record where he objected to the instructions now challenged, and this Court will not search the record to ascertain whether an issue was properly preserved absent a transcript reference by the challenging party. *State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829.

15

unfair notwithstanding the apparent guilt of the accused." *State v. Nevarez*, 2010-NMCA-049, ¶ 24, 148 N.M. 820, 242 P.3d 387 (internal quotation marks and citation omitted).

{23} The first component in a fundamental error analysis requires that we "determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Barber*, 2004-NMSC-019, ¶ 19. If we determine that there was an instructional error, we then "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." *Nevarez*, 2010-NMCA-049 ¶ 25 (alteration, internal quotation marks, and citation omitted). We have held that "[t]here is no miscarriage of justice where, despite any misunderstanding by the jury, the circumstances of the case demonstrate that all the necessary elements of the offense were satisfied beyond a reasonable doubt." *Id*. ¶ 26.

{24} Defendant asserts that the district court fundamentally erred in instructing the jury on all counts of CSPM and CSCM. Defendant was convicted of CSCM on Counts 3, 4, 5, 9, and 14, and of CSPM on Counts 2, 11, 12, and 13.[4] We note that the

---

[4]Defendant was also convicted of CSPM as to Count 8. However, because Count 8 concerned anal penetration, we do not address it herein and consider only those convictions containing an element of genital contact or penetration.

16

only count on which the jury received both an instruction for CSPM and CSCM was Count 5. As to each remaining count, the jury was solely instructed on either CSPM or CSCM, and therefore, there was no possible risk of confusion between the requisite elements of each offense. As such, we will solely address Count 5 in our fundamental error analysis and reject Defendant's overly broad contention that somehow the distinction in verbiage within the sexual intercourse instruction and the CSCM instruction theoretically bore aspects of overlapping error that rendered infirm the convictions as to either crime.

{25} Initially, we do not disagree that following the change in the definition of "sexual intercourse" to include "penetration of the vulva," there ultimately can be no contact with the vagina without a penetration of the vulva occurring. *See* UJI 14-981 (indicating that the opening of the vagina is encompassed within the vulva). We acknowledge that the overlap in the language of the CSCM instruction and the sexual intercourse instruction could have resulted in some juror confusion. However, we do not conclude that incongruencies in the jury instructions were fatal to the jury's comprehension of the definitions within or the elements of the crimes of which it chose to convict Defendant or that any such discrepancy amounted to fundamental error.

{26} As to Count 5, the jury was instructed that in the event that it had a reasonable

17

doubt as to whether Defendant committed CSPM, it must proceed to determine whether Defendant committed the lesser included offense of CSCM. To find Defendant guilty of CSCM, the jury was first instructed that he must have "touched or applied force to the vagina and/or groin area of [L.T.] with his penis[.]" The jury did not find Defendant guilty of CSPM on Count 5, but did find him guilty of CSCM. Similarly, the jury acquitted Defendant of Count 7, which reflects its reasoned belief that the State failed to prove Defendant engaged in "sexual intercourse" with H.T. and neither penetrated her vulva or vagina as set forth in Count 7. Our review of the record regarding Count 5, however, indicates that L.T. provided specific testimony describing how Defendant unzipped her pajamas, pulled down her underwear, and lay on top of her with his unclothed "private" touching her unclothed "private," skin to skin. It is clear that the jury determined that this incident did not amount to CSPM as it convicted Defendant of the lesser-included CSCM, which instructed that Defendant could be found guilty if he "touched or applied force to the vagina and/or groin[.]"

{27} Based on L.T.'s testimony, the jury could have reasonably determined that Defendant touched her unclothed groin area with his penis, amounting to CSCM, and it is not our role to disturb this finding on appeal. *See Sutphin*, 1988-NMSC-031, ¶ 21. Accordingly, "no distinct possibility exists from the evidence that the jury convicted Defendant without finding all the elements beyond a reasonable doubt."

18

*Barber*, 2004-NMSC-019, ¶ 26. We conclude that the CSCM jury instruction, even though arguably flawed from the standpoint of anatomical definitional accuracy, did not create such confusion in the jury that it would undermine the judicial process. However, as a result of any ambiguity or contradiction that may arise out of the change in the definition of "sexual intercourse" under UJI 14-982, we believe that "vagina" should be removed from the list of anatomy that can be included within the jury instructions for any criminal sexual contact. *See Tafoya*, 2010-NMCA-010, ¶ 52 (calling into question the wording of UJI 14-982 and making a suggestion for appropriate modification).

**KIDNAPPING**

{28} The jury convicted Defendant of four kidapping charges: Counts 6, 10, 15, and 16. Kidnapping in New Mexico is defined as the "unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent . . . to inflict . . . a sexual offense on the victim." NMSA 1978, § 30-4-1(A)(4) (2004). These charges arose from conduct attendant to the multiple sexual assaults Defendant perpetrated against H.T. and L.T. Defendant challenges these convictions, arguing that the Legislature did not intend to punish related incidental movement and restraints occurring prior to and during sexual assaults as the separate crime of kidnapping. Defendant further maintains that the evidence supporting his kidnapping

19

convictions was insufficient as it failed to establish conduct beyond actions that were contemporaneous with and incidental to the sexual assaults.

{29} We agree. Our review of these four convictions commences with a query of whether, in the light most favorable to the verdict, *see State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179, the restraints and movements to which the victims testified are sufficient, as a matter of law, to support convictions for kidnapping. *State v. Trujillo*, 2012-NMCA-112,¶ 6, 289 P.3d 238, *cert. granted*, 2012-NMCERT-011, 297 P.3d 1227. This Court has already held that "the Legislature did not intend to punish as kidnapping restraint or movement[s] that [are] merely incidental to another crime." *Id.* ¶ 1. In *Trujillo*, we analyzed whether the "momentary restraint of [a v]ictim in the course of a fight" was meant to be punished as kidnapping. 2012-NMCA-112, ¶ 22. After examining and interpreting our kidnapping statute, as well as those of other states, we determined that New Mexico follows the majority position that "kidnapping statutes do not apply to unlawful confinements or movements incidental to the commission of other felonies." *Id*. ¶ 31 (internal quotation marks and citation omitted). We additionally examined the three major tests employed by other courts to determine whether a restraint or movement is incidental to another crime, concluding that the overarching question of these three tests is "whether the restraint or movement increases the culpability of the defendant

over and above his culpability for the other crime." *Id*. ¶¶ 31-38. While we found the tests instructive to determining what conduct qualifies as incidental to another crime, we declined to explicitly adopt any of the tests on the basis that the facts of that case so clearly evidenced incidental conduct. *Id*. ¶ 39. Thus, we were able to make the determination as a matter of law. *Id*. ¶ 42. However, we did make it clear that the determination of incidental conduct was fact dependent based on the totality of the circumstances and stated our preference that more complicated factual situations are better resolved by a jury. *Id*. ¶¶ 42-43.

{30}     In this case, our review of the record reflects that L.T. testified to Count 6, and H.T. testified to Counts 15, 16, and 10, respectively referred to as the "first time," a "different time," and the "last time[.]" As to Count 6, L.T. testified that before Defendant sexually assaulted her, she, H.T., and Defendant were "in [her] mom's room." H.T. left the room, and L.T. remained in the bedroom with Defendant. L.T. stated that Defendant then lay on top of her on the bed and sexually assaulted her; no other evidence of restraint on her movement exists within the record. Similarly, H.T. testified that the "first time" Defendant sexually assaulted her, he "made [her] go to [her] mom's room." She later described the same incident, explaining that Defendant "took [her] to [her] mom's room." With regard to the "different time[,]" H.T. explained that after Defendant "made" her remove her clothing, they "went to

21

[another] room[,]" where the sexual assault occurred. The "last time" Defendant sexually assaulted H.T., she testified that she and Defendant were "in [her] mom's room[,] . . . [h]e made [her] take off [her] clothes[,]" and Defendant and H.T. "got on [her] mom's bed and . . . [Defendant] moved up and down and he made [her] put [her] mouth on top of his private."

{31}    The State acknowledges that the sole supporting evidence of kidnapping in Count 6 is that Defendant restrained L.T. by lying on top of her during the sexual assault. It further agrees that based on this Court's determination in *Trujillo*, lying on top of a victim during a sexual assault is insufficient to support a kidnapping conviction. "Although the [s]tate concedes this issue, we are not bound to accept the [s]tate's concession." *State v. Palmer*, 1998-NMCA-052, ¶ 12, 125 N.M. 86, 957 P.2d 71. However, in employing the *Trujillo* analysis, we determine that the nature of Defendant's incidental restraint did not increase his culpability beyond that already inherent to any sexual assault. L.T.'s testimony does not assert that the restraint was any longer or greater than that necessary to commit sexual assault. *See Trujillo*, 2012-NMCA-112, ¶¶ 34, 39 (citing one test for determining whether a restraint is incidental to another crime as "whether a defendant intended to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime" (alteration, internal quotation marks, and citation omitted)).

Furthermore, L.T.'s testimony does not establish that the restraint imposed increased her risk of harm or the severity of the assault beyond that inherent to the underlying crime. *See id.* ¶¶ 36, 39 (citing a second test for determining incidental conduct, inquiring into whether the movements of the victim "substantially increase[d] the risk of harm over and above that necessarily present" in the accompanying crime (internal quotation marks and citation omitted)). Lastly, the restraint herein did not serve to decrease Defendant's risk of detection or the difficulty of the commission of the crime. *See id.* ¶ 37 (citing this third test for determining conduct incidental to a crime). Under any criterion we have favored or applied, the restraint L.T. described was incidental to the sexual assault perpetrated upon her and did not establish conduct that the Legislature intended to support a kidnapping conviction.

{32} As to Count 10, H.T. did not explicitly testify that Defendant took, restrained, transported, or confined her. She stated that when she and Defendant were in her mom's room, he made her take off her clothes, and the two "got on [the] bed" where he sexually assaulted her. Notwithstanding, the State maintains that "[a] jury could reasonably infer from [the] testimony that [D]efendant exerted an independent amount of force or restraint on [H.T.] when he made her [remove her clothes] prior to exerting force or restraint during the sexual assault." Again employing the *Trujillo* analysis, any incidental restraint Defendant used in "making" H.T. remove her

23

clothing is not the type of separate conduct that the Legislature intended to punish as kidnapping. This conduct did not increase Defendant's culpability beyond that inherent to the assault; the restraint was not longer or greater than necessary to complete the assault, *see id.* ¶¶ 34, 39; it did not increase the risk of harm to H.T. or the severity of the assault, *see id.* ¶¶ 36, 39; and the restraint used to compel the removal of H.T.'s clothes in this situation is inherent to the sexual assault and was not done to make the commission of the crime easier or less detectable. *See id.* ¶ 37. We conclude that any restraint that was utilized to compel H.T. to remove her clothing was incidental to the sexual assault.

{33}     As to Counts 15 and 16, we recognize that instead of examining whether a *restraint* was incidental to a sexual assault, we are called upon to examine whether a *movement* was incidental to a sexual assault. Although *Trujillo* primarily reviewed whether an instance of restraint was incidental to a crime, one of the major tests this Court employed in our analysis was the test detailed by the Supreme Court of California in *People v. Daniels*, 459 P.2d 225 (Cal. 1969) (in bank). The *Daniels* court specifically examined whether the movement of a victim from room to room in order to commit robbery and rape constituted kidnapping. *Id.* at 227-28. The California court, having already recognized that a movement in the course of a kidnapping must be one that is not merely incidental to the commission of another

24

crime, employed a two-prong test to determine whether the movements were incidental to the commission of another crime. *Id*. at 231, 238; *see People v. Rayford*, 884 P.2d 1369, 323-24 (Cal. 1994) (summarizing the *Daniels* test).

{34}    The first prong analyzed the scope and nature of the movement in the context of the environment in which the movement occurred, and the second prong examined whether the movement subjected the victim to a substantial increase in risk of harm beyond that inherent in the accompanying crime. *Id*. The Court determined that when in the course of committing a crime, "a defendant does no more than move [the] victim around inside the premises" in which the victim is already found, the movement generally will not be determined to constitute kidnapping. *Daniels*, 459 P.2d at 238. Although the Court refrained from a detailed analysis into each prong of the test, it concluded that the conduct at issue constituted "brief movements" that were compelled in furtherance of the robbery that did not subject the victims to a substantial increase in a risk of harm above and beyond the type of movement inherent in a robbery and, therefore, were incidental. *Id*.

{35}    As we did in *Trujillo*, in the context of the restraint of a victim, we apply the *Daniels* analysis in the context of a movement of a victim. *Trujillo*, 2012-NMCA-112, ¶ 39. Here, H.T. testified that as to Count 15, Defendant "made" her go or "took" her into another room, and as to Count 16, she and Defendant "went" into another

25

room. In both instances, the movement was from one room to another in the family residence where they were both already located. Furthermore, this movement did not subject H.T. to a substantial increase in risk of harm above and beyond that inherent in a sexual assault. *See Daniels*, 459 P.2d at 238. Applying the *Daniels* test to the facts before us, we conclude these brief movements from one room to another, in furtherance of a sexual assault, were incidental to those crimes and cannot support separate kidnapping convictions.

{36} Accordingly, as to Counts 6, 10, 15, and 16, we reverse Defendant's convictions as a matter of law, and conclude that the restraints and movements described in the testimony were incidental to the sexual assaults, did not exceed the conduct inherent to a sexual assault, and did not evidence the type of conduct that the Legislature intended to be used to support separate kidnapping convictions. However, we note that the factual circumstances herein enable us to make this determination as a matter of law based upon the lack of complexity in the movements and restraints described. *Trujillo*, 2012-NCMA-112, ¶ 42.

**THE PHYSICIAN ASSISTANT'S TESTIMONY**

{37} Defendant argues that the district court erred in permitting the PA, whom the district court declined to qualify as an expert witness, to testify that her physical findings were consistent with sexual abuse. The State contends that the issue was not

26

properly preserved. We agree.

{38} At trial, the State called the PA who examined the victims after the sexual assaults to testify. She explained that at the time she met the victims, she was a physician assistant at Para Los Niños, an agency or department at "[the University of New Mexico that takes] care of children who have disclosed that they have been sexually abused or there is a concern about sexual abuse." The PA stated that during the sixteen months she worked at Para Los Niños, she saw 310 sexual abuse cases. She further indicated that she had previously been qualified as an expert in approximately five to seven child sexual abuse cases. The State moved to tender the PA as an expert, but the defense objected on the basis that she did not have sufficient specialized training. The district court decided that it would not qualify the PA as an expert witness as she had not performed individual research and had not been peer reviewed; however, it ruled that "[s]he can talk about what she observed. She can talk about what her observations may be consistent with. She just can't come to any conclusions." The court then asked if both the State and Defendant agreed with this ruling, and both parties responded affirmatively.

{39} The PA testified in a manner consistent with the ruling agreed to by the parties, stating that at the time she examined L.T., she observed erythema or redness "on the labia majora and minora on the right and on the clitoris." The State then asked her

what the possible reasons could be for the redness, and she responded that "[i]t could be sexual abuse . . . [or i]t also could be scratching or something like that." The defense never objected to the question or the answer. The PA later testified that L.T. had a "little scratch" on the right labia minora. Again, the State asked if this injury "could be consistent with sexual abuse[.]" The PA responded affirmatively. At this point, the defense objected on the basis that the PA is not an expert in sexual abuse and it was inappropriate for her to make such a conclusion. Outside of the jury's presence, the State argued that everyone previously agreed that it was allowable for the PA to discuss whether an observation is consistent with sexual abuse but not make a definitive diagnosis. The court found that the PA could testify whether the injuries were consistent with sexual abuse, but it was up to the jury to decide whether or not the injuries were definitively a result of sexual abuse. Back in the presence of the jury, the PA provided additional examples of what could have caused the injuries, including L.T. scratching herself, wearing tight underwear, or having urine or fecal matter in her underwear.

{40} Rule 11-103(A)(1)(a) NMRA requires that in order to preserve a claim of error, a party must make a timely objection. "Generally, evidentiary objections must be made at the time the evidence is offered." *State v. Neswood*, 2002-NMCA-081, ¶ 18, 132 N.M. 505, 51 P.3d 1159. Prior to Defendant objecting, he had already agreed that

28

it was appropriate for the PA to testify regarding her findings and what they might be consistent with. When Defendant finally did object during the PA's subsequent testimony, the PA had already previously testified, without objection, that the injuries could be consistent with sexual abuse or with L.T. scratching herself. It was not until the PA again testified about the possibility of sexual abuse that Defendant ultimately objected. As this Court has previously determined, under evidentiary circumstances such as these, "the horse was already out of the barn when Defendant tried to shut the door; the jury had already heard [of various possible causes of the injuries] before the objection was made." *Id*. Defendant should have objected immediately to the district court's inquiry into whether the party's were comfortable with the PA "talk[ing] about what her observations may be consistent with." Accordingly, we decline to review this argument any further because Defendant's objection was untimely and therefore not preserved.

**CONCLUSION**

{41} For the foregoing reasons, we affirm Defendant's conviction as to Counts 2, 3, 4, 5, 8, 11, and 13. We reverse as to Counts 6, 10, 15, and 16. We remand for resentencing in accordance with this opinion.

29

{42}     **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**


**I CONCUR:**


_____
**CYNTHIA A. FRY, Judge**


**TIMOTHY L. GARCIA, Judge**, (concurring in part, dissenting in part).

**GARCIA, Judge (concurring in part and dissenting in part)**

{43}     Respectfully, I disagree with one aspect of the majority decision and would reverse Defendant's conviction of CSPM alleged in Count 13 and remand for the entry of an amended judgment and resentencing on the lesser included offense of CSCM for Count 13.

{44}     The majority determined that sufficient evidence exists from the testimony to support a conviction of CSPM under Count 13 because "it would be unwise for us to establish within our caselaw any requirement that the trial record reflect comprehension of anatomic specifics or the technical nuances of what constitutes penetration under the applicable jury instruction." Majority Opinion ¶ 9. In effect, the majority explained that evidence need not be so anatomically exacting in situations such as this one, involving skin to skin contact where Defendant "would slide his fingers *up and down on* [H.T.'s] private part." Majority Opinion ¶¶ 6, 9 (Emphasis added.) However, when specifically asked to clarify this testimony, defense counsel asked H.T., "[Y]ou testified today that when [Defendant] put his hand on your private, he would move it in and out. Is that how you worded it?" H.T.'s response was "*No*, like . . . he would move *up and down*." (Emphasis added.) The answer was confirmed a second time. "Up and down?" Answer: "Yes." The only other evidence

31

or testimony regarding the factual allegations for Count 13 came from the PA who examined H.T. several days later and testified that "she did not observe any injuries" on H.T. but did observe redness and small scratch injuries on her sister, L.T. Majority Opinion ¶ 6.

{45} The factual issue in this case is not about H.T.'s comprehension of anatomical specifics or technical nuances. H.T.'s reference to her vagina as "my private part" is not at issue in this case. Defendant does not argue that his conviction should be overturned because H.T. failed to sufficiently describe Defendant's fingers sliding up and down on her vagina. The only issue is whether the evidence established the insertion, to any extent, of Defendant's finger(s) into the vagina of H.T. *See* UJI 14-957 NMRA (requiring insertion into the body part of a child as one of the elements for CSPM of a child under the age of thirteen); § 30-9-11(A). When asked this specific question regarding whether Defendant put his hand in her private part, H.T. answered "No." The State does not challenge the veracity or truthfulness of H.T.'s answer to the only question that was asked regarding the potential penetration of her vagina.

{46} Sufficient evidence exists to affirm a conviction where substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a

32

reasonable doubt with respect to each essential element of a crime charged. *Apodaca*, 1994-NMSC-121, ¶ 3. In reviewing an insufficiency claim, we must view the evidence in the light most favorable to the state and indulge all reasonable inferences in favor of the verdict. *State v. Phillips*, 2000-NMCA-028, ¶ 7, 128 N.M. 777, 999 P.2d 421. The only evidence offered regarding whether Defendant inserted his finger, to any extent, into the vagina of the victim was specifically answered by H.T.—"No." The record is void of any other evidence of penetration of H.T.'s vagina. Any other logical inference or conclusion of penetration that might be drawn from H.T.'s answer is nothing more than pure speculation, conjecture, or guesswork. Our appellate courts do not permit the jury to determine guilt based upon speculation, guess, or conjecture. *State v. Rojo*, 1999-NMSC-001, ¶ 31, 126 N.M. 438, 971 P.2d 829; *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930, *cert. granted* 2014-NMCERT-008, 334 P.3d 425; *see* UJI 14-6006 NMRA (instructing the jury not to base their verdict on speculation, guess or conjecture). The jury was asked to utilize speculation and conjecture to contradict H.T.'s direct testimony and then impermissibly infer that other evidence established penetration *into* her private part.

{47} As a result, I respectfully dissent regarding Defendant's conviction of CSPM under Count 13. Because the lesser included offense of CSCM was also presented to

33

the jury regarding Count 13 and because sufficient evidence exists for a reasonable jury to convict Defendant of CSCM regarding Count 13, this Court should have remanded for the entry of judgment and resentencing for CSCM on Count 13. *See Slade*, 2014-NMCA-088, ¶ 38 (Generally, "appellate courts have the authority to remand a case for entry of judgment on the lesser included offense and resentencing rather than retrial when the evidence does not support the offense for which the defendant was convicted but does support a lesser included offense." (internal quotation marks and citations omitted)); *State v. Haynie*, 1994-NMSC-001, ¶¶ 3-4, 116 N.M. 746, 867 P.2d 416 (reversing the defendant's first degree murder conviction due to insufficient evidence and remanding to the district court for entry of judgment on the lesser included charge of second degree murder where the jury had been instructed on that charge, substantial evidence supported conviction on that charge, and the interests of justice would not be better served by a new trial). For the reasons stated herein, I would reverse the district court's determination of guilt for CSPM under Count 13 and would remand Count 13 for entry of judgment and resentencing for the lesser included charge of CSCM. I concur in the majority decision in all other respects.

_____

**TIMOTHY L. GARCIA, Judge**