This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38998

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**WILLIAM J. BIERNER,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Thomas F. Stewart, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Harrison & Hart, LLC
Daniel J. Gallegos
Nicholas T. Hart
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}**   Defendant William J. Bierner appeals his convictions for possession of a controlled substance (methamphetamine) in violation of NMSA 1978, Section 30-31-23 (2011, amended 2021) and battery upon a peace officer in violation of NMSA 1978, Section 30-22-24 (1971). Defendant argues that (1) the district court erred in denying

his motion to suppress evidence seized from a residence pursuant to a warrant; and (2) there is insufficient evidence to support his convictions. Unpersuaded, we affirm.

**DISCUSSION**[1]

**I.      Agent Flores's Affidavit Provided a Substantial Basis to Support a Finding of Probable Cause to Search the Residence**

**A.      Standard of Review**

**{2}**      We review the issuance of search warrants under a substantial basis standard. *See State v. Williamson*, 2009-NMSC-039, ¶ 29, 146 N.M. 488, 212 P.3d 376. Our role is to "determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing." *Id.* This standard of review is "more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Id.* ¶ 30. Thus, "if the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court has found probable cause, the reviewing courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* (alteration, internal quotation marks, and citation omitted).

**{3}**      Both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution "require probable cause to believe that a crime is occurring or seizable evidence exists at a particular location before a search warrant may issue." *Id.* ¶ 14 (internal quotation marks and citation omitted). A search warrant may be issued when "sufficient facts are presented in a sworn affidavit to enable the [issuing court] to make an informed, deliberate, and independent determination that probable cause exists." *State v. Gonzales*, 2003-NMCA-008, ¶ 11, 133 N.M. 158, 61 P.3d 867, *abrogated on other grounds by Williamson*, 2009-NMSC-039, ¶ 29. This affidavit "must show: (1) that the items sought to be seized are evidence of a crime; and (2) that the criminal evidence sought is located at the place to be searched." *State v. Evans*, 2009-NMSC-027, ¶ 11, 146 N.M. 319, 210 P.3d 216 (internal quotation marks and citation omitted). We limit our review to the information contained within the four corners of the search warrant affidavit. *Williamson*, 2009-NMSC-039, ¶ 31.

**B.      Analysis**

**{4}**      Defendant argues that the district court erred in denying his motion to suppress because the search warrant affidavit did not furnish sufficient probable cause to search the residence. Defendant attacks the affidavit on the following bases: (1) the affidavit included hearsay statements from anonymous sources but lacked information on their

---

[1]Because the parties are familiar with the factual background, this memorandum opinion does not include a background section. We describe the pertinent facts in the discussion section.

veracity and basis of knowledge; and (2) neither Defendant's active arrest warrant for trafficking narcotics nor the affiant's nonhearsay observations of lawful activity sufficed for probable cause that criminal evidence would be found in the residence.

**{5}** As an initial matter, the State concedes that the district court properly accorded no weight to the hearsay statements from the anonymous sources. While we are not bound by the State's concession, *see State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we nevertheless accept the concession in this case, *see* Rule 5-211(E) NMRA (stating that probable cause for a search warrant may be based on hearsay "in whole or in part," provided certain credibility requirements are met), and therefore disregard these statements in our substantial basis review. *See State v. Cordova*, 1989-NMSC-083, ¶¶ 10-11, 18, 109 N.M. 211, 784 P.2d 30. We are left with the remaining nonhearsay information contained in the warrant, which includes Defendant's active arrest warrant for trafficking narcotics and the affiant's nonhearsay observations of lawful activity. Defendant argues that this information did not amount to probable cause that evidence of criminal activity would be found in the residence. We disagree.

**{6}** The affidavit included enough information to support a reasonable inference that the items sought to be seized were evidence of a crime and would be located at the place to be searched. *See Evans*, 2009-NMSC-027, ¶ 11. The search warrant authorized a search of a residence at 108 North Cleveland Street for methamphetamines, paraphernalia used to ingest controlled substances, scales, and packaging materials used to store or distribute controlled substances, among other items. These items are all evidence of a crime, specifically, trafficking narcotics.

**{7}** Defendant had an active arrest warrant for trafficking narcotics, but, as Defendant points out, this fact *alone* does not inexorably lead to the conclusion that evidence of narcotics trafficking would be found in Defendant's residence. *See id.* ¶ 24 (explaining that "probable cause [to believe that there is criminal evidence in the accused's home] does not follow ineluctably from an allegation of murder or any other crime"). Instead, the inferential link between the two conclusions "must be made by the reviewing judge or magistrate on a case-by-case basis," considering the "evidence in totality." *Id.* ¶¶ 24, 28.

**{8}** Here, the other evidence in the affidavit provided the inferential link between Defendant's active arrest warrant for narcotics trafficking and probable cause that evidence from that crime would be found in the residence. *Cf. State v. Ferrari*, 1969-NMSC-146, ¶ 11, 80 N.M. 714, 460 P.2d 244 ("A showing of probable cause that one has committed murder ordinarily is enough to justify the search of [a person's] house and the surrounding area and [their] business as it may be reasonably inferred that evidence of the crime may be located on those premises."); *see also Evans*, 2009-NMSC-027, ¶¶ 26-27 (concluding that a preliminary police investigation resulting in physical evidence and incriminating statements provided the inferential link between the murder suspect and the victim's death to furnish probable cause to issue a search warrant for the suspect's home). The affiant, Agent Richard Flores, was employed by the Silver City Police Department as a narcotics investigator. Flores stated that on

March 25, 2019, he and Detective Bascom conducted surveillance at a residence located at 108 North Cleveland Street in Santa Clara, New Mexico. The purpose of the surveillance was to serve an arrest warrant on Defendant, who had "an active warrant for his arrest for trafficking narcotics." While conducting surveillance, Flores observed one subject enter the residence and leave within ten minutes. When Flores attempted to initiate contact with the subject, he "evaded" the officers. Flores noted that this reaction was "odd" because the subject did not have any active warrants at that time. Flores also observed another subject exit the residence and get into a parked vehicle outside of the residence. Flores stopped this subject several minutes later. When questioned about whether he had visited the residence, the subject was initially untruthful. He first claimed that he had visited his "grandma's house." When Flores explained that he had observed the subject's vehicle leaving the residence, he then claimed that he had "lent his vehicle to someone else." When Flores explained that he had observed the subject exit the residence and get into his vehicle, the subject then disclosed that he had been there to visit Defendant. Defendant eventually exited the residence, and Flores approached him, identified himself as a police officer, and told him that he was under arrest for an active warrant. In response, Defendant was "visibly nervous," "would not listen to commands," and "tried backtracking toward his house." Flores also observed the following: a video surveillance system installed outside of the residence, a spoon and shotgun rounds located inside a vehicle registered to Defendant, and a spent shell casing on the porch of the residence. Flores concluded that, "[b]ased on [his] training and experience, the activity observed is consistent with narcotics activity."

**{9}** This evidence provided the inferential link between Defendant's active arrest warrant for narcotics trafficking and probable cause that criminal evidence would be found in the place to be searched. While it is true that there is no single, telling piece of evidence, we have never said that such evidence is required to establish probable cause. *See Evans*, 2009-NMSC-027, ¶ 21 (clarifying that "overwhelming physical evidence is not required in every case to establish probable cause"). The testimony in the affidavit, viewed as a whole and with all reasonable inferences drawn therefrom, provides a substantial basis for determining that there was probable cause to believe that a search would uncover evidence of a crime at the residence. *See Williamson*, 2009-NMSC-039, ¶ 29.

**{10}** There seems to be some factual dispute as to whether the premises described in the warrant was Defendant's residence. We believe that, under the circumstances of this case, whether the residence was Defendant's is not dispositive. In *Evans*, our Supreme Court noted that

> [t]he fundamental inquiry is whether there is probable cause to believe there will be evidence of a crime *at a particular location*. Residence may be a component of this, but residence is not necessary, nor is it always sufficient, to establish probable cause to believe that the location to be searched contains evidence of a crime.

2009-NMSC-027, ¶ 25 (citation omitted); *see also State v. Herrera*, 1985-NMSC-005, ¶ 8, 102 N.M. 254, 694 P.2d 510 (articulating the "basic requirement that the residence to be searched must be established to be that of the suspect, or *alternatively*, that the items sought to be seized are located at that residence" (emphasis added)).

**{11}** Here, even if Flores lacked personal knowledge that the location described in the warrant was in fact Defendant's residence, other statements in the affidavit supported the inference that the items sought to be seized would be located at that location. Defendant had an active arrest warrant for narcotics trafficking; Flores observed Defendant at the residence; one visitor left the residence within ten minutes of arriving, evaded officers and acted "odd"; the other visitor was initially untruthful about having visited the residence but ultimately disclosed that he was there to visit Defendant; Defendant was "visibly nervous" when confronted by the officers; and there was a video surveillance system installed outside of the residence. We believe that this evidence established probable cause to believe that the location to be searched contained evidence of narcotics trafficking—even if the premises were not Defendant's actual residence.

**{12}** Lastly, Defendant's argument that affiant's observations amounted to innocent, lawful activity is misguided because it is based on a faulty premise: Defendant incorrectly considers these observations in isolation from the other evidence in the affidavit. The question before us is not whether each piece of evidence in the affidavit—considered individually and in isolation from the other evidence in the affidavit—supports a determination of probable cause. Instead, we "look to the totality of the circumstances to determine if probable cause is present." *Williamson*, 2009-NMSC-039, ¶ 31 (internal quotation marks and citation omitted); *see id.* ¶ 34 (concluding that, although the defendant's nervousness and evasiveness were lawful, when viewing the facts and circumstances alleged in the affidavit together, the reasonable inference was that it was more likely than not that the defendant was engaged in narcotics trafficking than innocent lawful activity). Although it may be true that, standing alone, Agent Flores's observations amounted to innocent activity, when those observations are considered in the aggregate along with the other information in the affidavit, they support a reasonable inference that the residence contained evidence of narcotics trafficking.

**{13}** We hold that there was a substantial basis for the district court's probable cause determination. We therefore affirm the order denying Defendant's motion to suppress.

## II.     The Evidence Suffices to Support Defendant's Convictions

**{14}** Defendant also argues that there was insufficient evidence to convict him of possession of methamphetamine and battery on a peace officer. We disagree with both arguments.

## A.      Standard of Review

**{15}** When reviewing the sufficiency of the evidence, we "scrutin[ize] . . . the evidence and supervis[e] . . . the jury's fact-finding function to ensure that . . . a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). We first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. "We will affirm a conviction if supported by a fair inference from the evidence regardless of whether a contrary inference might support a contrary result." *State v. Barrera*, 2002-NMCA-098, ¶ 10, 132 N.M. 707, 54 P.3d 548. We measure the State's evidence against the jury instructions that the district court gave. *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517.

**B.    Analysis**

**1.    Possession of a Controlled Substance (Methamphetamine)**

**{16}** Defendant argues that the State failed to present sufficient evidence that he constructively possessed methamphetamine because there was no evidence to support Defendant's exclusive possession of the residence where the methamphetamine was found. We disagree. The jury was instructed that, to convict Defendant of possession of a controlled substance, it had to find beyond a reasonable doubt, in relevant part, that Defendant had methamphetamine in his possession. **[SRP 314]** The district court also instructed the jury as follows regarding the act of possession:

> A person is in possession methamphetamine [sic] when he knows it is on his person or in his presence, and he exercises control over it. Even if the substance is not in his physical presence, he is in possession if he knows where it is, and he exercises control over it. Two or more people can have possession of a substance at the same time. A person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession.

**{17}** Under our deferential standard of review, we hold that the State presented sufficient evidence for the jury to conclude beyond a reasonable doubt that Defendant constructively possessed the methamphetamine found at the residence. Both Detective Bascom and Agent Flores testified at trial. Bascom testified that he and Flores went to Defendant's residence to execute a warrant for Defendant's arrest. At trial, jurors were shown photos of the exterior and interior of Defendant's residence. One photo showed the exterior door of Defendant's residence, which was secured by a padlock. Flores testified that, in the search incident to Defendant's arrest, he obtained a key that opened this padlock. Another photo showed a piece of furniture in the living room area

containing a drawer, in which Flores testified that he found a bag containing what was later confirmed by the forensic expert to be methamphetamine. Flores also testified that other evidence seized from the residence included glass pipes "consistent with pipes used to smoke methamphetamine, . . . a digital scale, . . . and a large amount of plastic bags which are commonly used as packaging material."

**{18}** Viewing this evidence in the light most favorable to the guilty verdict, a jury could reasonably infer that Defendant knew that the methamphetamine was in the drawer and that he exercised control over it. That suffices for possession under the instructions given. Even though "women's clothing" and "high heel shoes" were also found in the residence, the members of the jury were free to "'use their common sense to look through testimony and draw inferences from all the surrounding circumstances,'" *State v. Chandler*, 1995-NMCA-033, ¶ 14, 119 N.M. 727, 895 P.2d 249 (quoting *United States v. Davis*, 562 F.2d 681, 688 (D.C. Cir. 1977) (per curiam)), and to reject Defendant's argument that he did not have exclusive possession of the residence. *See Rojo*, 1999-NMSC-001, ¶ 19. Even if the jury had believed Defendant's argument, we believe that the jury could have reasonably inferred constructive possession based on the other evidence seized, which included glass pipes used for smoking, a digital scale, and a large number of plastic bags. *See State v. Phillips*, 2000-NMCA-028, ¶ 10, 128 N.M. 777, 999 P.2d 421 (finding that, where the defendant did not have exclusive control over the premises, the inventory of seized drug paraphernalia—beyond the mere presence of drugs—constituted additional circumstances that created an inference of constructive possession). The evidence is sufficient to support the conviction.

## 2. Battery on a Peace Officer

**{19}** Lastly, we hold that the State presented sufficient evidence for the jury to conclude that Defendant knew Bascom and Flores were peace officers. Bascom testified that he went to the residence to locate Defendant, who had an outstanding warrant for his arrest. He drove to the residence in a 2019 Dodge Charger vehicle, which is a vehicle commonly used by police departments. The vehicle was outfitted with a government-issued license plate and was parked such that the license plate would have been easily visible to Defendant. Bascom also testified that, on the day of the incident, he was wearing a green polo shirt, brown slacks, black shoes, and a badge on his right hip with a firearm next to the badge. Nothing was obstructing the badge's display. As he approached Defendant, he identified himself as a police officer "multiple times." Bascom testified that, during the altercation between Defendant and Flores, Defendant never called for help from the police nor did he ever indicate that he did not believe that Bascom or Flores were police officers.

**{20}** Flores testified to similar facts. On the day of the incident, Flores went to the residence with Bascom to conduct surveillance on Defendant and to serve an arrest warrant on him. Flores was dressed in a t-shirt and jeans and had a badge displayed on his right hip, next to his duty weapon. Over the course of the incident, Flores announced to Defendant "multiple times" that he was "with the Silver City Police Department" and that he was attempting to serve an arrest warrant on Defendant. He further testified that

Defendant never challenged that he was a police officer. At one point, when Defendant attempted to walk back towards the residence, Flores told Defendant "several times" to "stop" or that Defendant would be placed under arrest.

**{21}** This testimony is sufficient for the jury to conclude that Defendant knew the officers were peace officers. *See State v. Gutierrez*, 2007-NMSC-033, ¶ 36, 142 N.M. 1, 162 P.3d 156 (holding that the jury could infer that a defendant knew of an officer's status from evidence that the officer approached the defendant in an authoritative manner with insignia of office clearly displayed, the officer indicated that he needed to talk to the defendant, and the officer subsequently chased the defendant when he failed to stop). Although Defendant denied that he knew they were peace officers, "the jury [was] free to reject [his] version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19. We therefore uphold Defendant's conviction for battery on a peace officer.

**CONCLUSION**

**{22}** We affirm.

**{23}** **IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**JANE B. YOHALEM, Judge**